[S.F. No. 23249. In Bank. Mar. 14, 1975.]

MARILYN PESTARINO ZECHER, Petitioner, v.
KENNETH CORY, as State Controller, et al., Respondents.

744

**COUNSEL**

John M. Burnett and Charles B. Leib for Petitioner.

Evelle J. Younger, Attorney General, Iver E. Skjeie, Assistant Attorney General, and Richard C. Creeggan, Deputy Attorney General, for Respondents.

**OPINION**

**THE COURT—**  Petitioner, whom former Governor Reagan appointed on January 2, 1975, to a vacancy in an office of the Superior Court for Santa Clara County, seeks a writ of mandate to compel respondents, the Controllers respectively of the State of California and the County of Santa Clara, to pay her salary.[1] Mandate is the proper remedy. (*California Educational Facilities Authority* v. *Priest* (1974) 12 Cal.3d 593, 598 [116 Cal.Rptr. 361, 526 P.2d 513]; *Sawyer* v. *Colgan*

---

[1]The expense of the salary of a superior court judge is shared by the state and the county for which the judge is elected or appointed. (Gov. Code, § 68206.)

(1894) 102 Cal. 283, 293 [36 P. 580, 834].) We have concluded that the peremptory writ should issue as prayed.

This dispute, like that in *Anderson* v. *Phillips, ante,* page 733 [119 Cal.Rptr. 879, 532 P.2d 1247], also filed today, involves the duration of a vacancy in a superior court office. The former incumbent of the office in dispute, Judge James B. Scott, was elected to a new term at the general election of June 4, 1974. His new term was to commence on January 6, 1975. (Cal. Const., art. VI, § 16, subd. (c).) Judge Scott vacated the office on December 13, 1974, however, when he became an Associate Justice of the Court of Appeal. He continued in the new office through January 6, 1975, and to the present. Petitioner contends on that basis that under the provisions of article VI, section 16, subdivision (c), the vacancy in the superior court office to which she was appointed continues until a judge elected in the 1976 general election qualifies and takes office on January 3, 1977. We agree.

■ We held today in *Anderson* v. *Phillips, supra, ante,* page 733, that under the express language of article VI, section 16, subdivision (c), a person appointed by the Governor to fill a vacancy in a superior court office is entitled to "fill the vacancy temporarily until the elected judge's term begins," and that if an incumbent who has been elected to succeed himself vacates the office by taking an incompatible oath, the term to which he had been elected does not come into existence. Thus the vacancy in the superior court office to which petitioner was appointed continues until a judge elected at the next general election assumes the office.

Let the peremptory writ of mandate issue as prayed.

**MOSK, J.**—I dissent.

The result reached by the majority in this case is as incomprehensible as their conclusion in *Anderson* v. *Phillips, ante,* page 733 [119 Cal.Rptr. 879, 532 P.2d 1247]. I will not repeat my dissenting views, but merely point out how indefensible the court's rule becomes in the instant context.

Judge Scott was reelected to the superior court in June 1974. He received from the Secretary of State an official certificate declaring him to be elected and authorizing him to take an oath of office on January 6, 1975, for a full six-year term. On December 13, 1974, Judge Scott was appointed to the Court of Appeal. This is deemed to be a promotion.

Nevertheless it is not beyond the realm of possibility that Judge Scott would have found the comparative isolation of appellate research and writing less desirable than trial work, and would have chosen to assume the office to which the voters elected him. Had he taken an oath as a superior court judge on January 6, 1975, there is no rational theory upon which he could have been denied the opportunity to serve, or the voters of Santa Clara County denied the results of their democratic selection of him for a full six-year term.

The Scott circumstances were precisely duplicated a decade and a half ago, as discussed by the Attorney General in 36 Ops.Cal.Atty.Gen. 77 (1960). Judge Shoemaker of San Francisco was reelected to the superior court in June and appointed to the Court of Appeal almost immediately thereafter. Judge McCarty was appointed to succeed him. The issue there, as here, was whether Judge McCarty's appointment was valid for the term beginning in January to which Shoemaker had been elected. The Attorney General, in a formal opinion, concluded:

"The meaning of this provision of section 8 is clear. The commencement of the term of Judge Shoemaker who was elected to the office in the June primary is the first Monday after the first day of January 1961. The person appointed by the Governor, Judge McCarty, holds the 'vacant office' under his June appointment until that time. In other words, the commencement of the term to which Judge Shoemaker was elected marks the expiration of the term of the appointed successor, Judge McCarty, under his June appointment.

"The commencement of Judge Shoemaker's term will thus see the occurrence of another vacancy, in which event section 8 provides that 'the Governor shall appoint a person to hold the vacant office.' While it is highly unlikely that Judge Shoemaker will decide to vacate his office as Justice of the District Court of Appeal and return to his office as judge of the superior court, if he does so decide there is nothing to prevent his qualifying for the office to which he was elected in the June primary. Assuming that he does not qualify, however, it is our conclusion that a vacancy does arise at the commencement of the new term.

"The foregoing conclusions that a vacancy arises both upon the resignation before the close of the expiring term and also upon the failure to qualify at the commencement of the new term are supported by the cases which have considered the problem. No vacancy in a term can occur until a term has commenced. *People* v. *Waterman,* 86 Cal. 27,

30, 24 Pac. 807, 808 (1890). The resignation or death of an officer-elect before commencement of the term to which he has been elected creates no present vacancy in that term which would allow an appointment to be made. *People* v. *Ward,* 107 Cal. 236, 40 Pac. 538 (1895). If he is also the incumbent of an existing term, as is the case here, his resignation or death creates a present vacancy only for the remaining months of that term. 33 Ops.Cal.Atty.Gen. 1, 2 (1959). The power of appointment to the new term will not accrue until after the commencement of that term. *DeWoody* v. *Belding,* 210 Cal. 461, 464-465, 292 Pac. 265, 266 (1930)."

Similarly, in 33 Ops.Cal.Atty.Gen. 1 (1959) the Attorney General held that when an incumbent resigned to assume a higher judicial office, the resignation created no vacancy in a term which had not begun. Said the Attorney General: "[w]hatever phrase might be used to describe his action—prospective resignation or abandonment—that action created a vacancy in the new term only upon the latter's commencement."

It is easy to illustrate how untenable is the majority conclusion. Consider, for example, three hypothetical circumstances.

Superior court Judge A is reelected in June for a six-year term to begin in January. Having labored without a vacation for years, he decides to take a half-year sabbatical, for travel and study abroad, before assuming his new term. Conscious of his court's caseload, however, he resigns in order to permit an appointment for the six-month balance of his expiring term. When Judge A returns in January, refreshed and prepared to embark upon his new full term, the majority would bar him in favor of the temporary replacement.

Superior court Judge B is also reelected in June for a six-year term to begin the following January. Shortly after the election he becomes seriously ill and retires, and the Governor fills the vacancy. A few months thereafter Judge B fully recovers[1] and on January 6, 1975, takes his oath for the new term to which he had been elected. The majority would bar him from serving.

Superior court Judge C is reelected in November for a term beginning the following January. After election he is importuned by the outgoing Governor to assist in cataloguing the papers of his administration. He

---

[1] This is not a fanciful illustration. Several years ago Superior Court Judge Allen Lynch of Los Angeles became seriously ill, retired, then later fully recovered and resumed his place on the bench. Fortunately for Judge Lynch no election or term problem was involved.

agrees to do so, but because of his court's backlog, he resigns so that a temporary judge may be appointed to carry on the judicial work for the final two months of his expiring term. After the gubernatorial transition is completed and on the day the new Governor is sworn in Judge C takes his oath for the new full term to which the voters of his county elected him. The majority would bar him from serving.

The inexplicable result of the majority opinion is that hereafter every judge must be concerned with the tasks he undertakes *before* his new term begins, for fear that early termination of a previous term, for any reason or for no reason, will be deemed a bar to his embarking upon the full term to which he has been elected. This remarkable concept of disqualification by virtue of pre-term conduct not only prevents a duly elected judicial officer from assuming an office to which he is entitled, it thwarts the voters of the county from achieving the result which they electorally chose.

Not merely judges are elected to the superior court; the voters not infrequently elect. lawyers. What disability is imposed upon a lawyer chosen in June or November for the superior court term beginning the following January? Does he forfeit the new term to which he has been elected by taking a temporary position in county, state or federal government, or with a private employer, between the election and the January induction date?

The majority fail to grapple with that problem, probably because they cannot conceive of a forfeiture theory for lawyers elected to the bench. The result, then, is that if a member of the bar is elected, in June or November, to a full term on the superior court, there is no requirement that he perform, or refrain from performing, any act or service prior to the date in January when he takes his oath of office. But under the strange theory this court adopts, a judge is denied that same freedom of choice; if he is on the court before election he must remain there without interruption or he forfeits forever the new term to which he was elected. There is no rational basis for arbitrarily creating this distinction between judges and lawyers elected to a new term on the superior court.

For the foregoing reasons, and those set forth in *Anderson* v. *Phillips, supra, ante,* page 733, I would deny the writ.

The petition of respondent Cory for a rehearing was denied April 15, 1975. Mosk, J., was of the opinion that the petition should be granted.