[L.A. No. 30660. Dec. 20, 1976.]

MARILYN SUE BARTON, Petitioner, v.
LEONARD PANISH, as Registrar, etc., et al., Respondents;
J. KIMBALL WALKER et al., Real Parties in Interest.

**COUNSEL**

Ellis J. Horvitz and Arthur E. Schwimmer for Petitioner.

John H. Larson, County Counsel, and Edward G. Pozorski, Deputy County Counsel, for Respondents.

Evelle J. Younger, Attorney General, Iver E. Skjeie, Assistant Attorney General, Floyd D. Shimomura, Deputy Attorney General, Overton, Lyman & Prince, Carl J. Schuck and George Chirstensen for Real Parties in Interest.

**OPINION**

**CLARK, J.**—Marilyn Sue Barton petitions for writ of mandate to compel Los Angeles County Registrar, Board of Supervisors, Clerk of the Board of Supervisors, and Secretary of State to certify the results of the 8 June 1976 primary election for Office No. 1 of the Los Cerritos Municipal Court. By leave of court, the Governor has been permitted to intervene.

Judge Roberta Butzbach was elected to the office with a term expiring 3 January 1977. Although she filed a timely notice of intention to stand for reelection, she subsequently determined to retire on 1 March 1976, not perfecting her candidacy. On 12 March, Irv Schleimer filed nomination papers and on 15 March, petitioner filed within the five-day extension allowed when an incumbent does not perfect candidacy.

On 1 April, the Secretary of State certified petitioner and Schleimer as candidates for the office. Each paid the $416.67 filing fee and incurred substantial campaign expenditures in both time and money.

On 4 May 1976, and after the sample ballots for the June election had been mailed, Governor Edmund G. Brown, Jr., appointed J. Kimball

Walker, real party in interest, to the office. He took his oath three days later and has performed the duties of office since then.

Petitioner received a majority of the votes cast at the election. However, respondents refused to certify the election results, claiming the election was void under Government Code section 71180.

Municipal judges are elected at general elections held in the even-numbered year before the current term expires. (Cal. Const., art. VI, § 16, subd. (b); art. XX, § 20.) Government Code section 71180 provides: "Any vacancy in the office of judge of a municipal court shall be filled by appointment by the Governor, but no vacancy shall be deemed to exist in any such office before the time fixed in Sections 71080, 71082, and 71083 for the selection of the judges of such court and the time fixed by law for their qualification. The appointee shall hold office for the remainder of the unexpired term of his predecessor and until his successor is elected and qualifies. [¶] If the office to which any person so appointed was not previously occupied, he shall hold office until his successor is elected at the general state election next succeeding the occurrence of the vacancy and qualifies. *No successor to such appointee shall be elected at any election held within 10 months of the date of the occurrence of the vacancy.*" (Italics added.)

The 10-month limitation of section 71180 is applicable not only to newly created judicial offices, but also to vacancies occurring due to the retirement or death of a judge. (*Brailsford* v. *Blue* (1962) 57 Cal.2d 335, 338-339 [19 Cal.Rptr. 485, 369 P.2d 13]; *Campbell* v. *Hite* (1962) 57 Cal.2d 484, 487 [20 Cal.Rptr. 328, 369 P.2d 944].) The primary election can in effect be a general election when one of the candidates receives a majority of the votes at the primary, and the term "any election" in the last sentence of section 71180 includes a primary election. (*Id.*)

*Brown* v. *Hite* (1966) 64 Cal.2d 120 [48 Cal.Rptr. 869, 410 P.2d 373], and *Caldwell* v. *Bruning* (1966) 64 Cal.2d 111 [48 Cal.Rptr. 849, 410 P.2d 353], considered the application of the 10-month limitation of section 71180 when the vacancy and appointment occur after commencement of the electoral process. In both cases the vacancies and appointments occurred after the primary election, some of the appointments having been made before and some after the general election. This court held that if the predecessors of the appointees were reelected to a new term prior to the appointment (the electoral process having been completed),

the appointees would serve for the entire new six-year term but if the predecessor had not been elected for the new term, the appointee would be required to stand for election at the next general election.

Concluding that two of the appointees fell into the latter category, the court determined that the 10-month requirement precludes election when an appointment occurs during the course of the electoral process but before its completion.

"Judges Clinco and Cooke, the predecessors of Judges Grillo and Mohr, respectively, resigned more than 45 days prior to the 1964 general election. Therefore, at the time of their resignations the substantive portion of the elective process was incomplete and it would seem that they cannot be deemed to have been elected to new terms of office. [1] [¶] Even if Elections Code section 25304 is interpreted as permitting an incumbent to be automatically elected subsequent to his resignation the election of Judges Clinco and Cooke would be *unauthorized,* for Government Code section 71180 provides that no successor to an appointee shall be elected within 10 months of the occurrence of a vacancy in the office. The resignations of Judges Clinco and Cooke created a vacancy, and their subsequent election would be within 10 months of the occurrence of this vacancy. With reference to the new term of office they would be successors to petitioners Grillo and Mohr, who are appointees. Thus, *their election would be contrary to the provisions of Government Code section 71180.*" (*Brown* v. *Hite, supra,* 64 Cal.2d at pp. 127-128; italics added.)

Thus, *Brown* reasons that an appointment made at any time during the election process—the vacancy occurring within 10 months of the election—serves to postpone the election.

▮ Contending that the 10-month limitation of section 71180 should be held inapplicable when the elective process is under way and irreversible, petitioner urges that literal application of the section causes unreasonable results, and that Elections Code section 25305 reflects legislative intent that once the electoral process has begun it should not be defeated.

---

[1]Judges Clinco and Cooke were unopposed but write-in candidates could file until 45 days before the election. (Elec. Code, § 25304.)

The asserted unreasonable results include the Governor's waiting to make an appointment until immediately before the election, or until after the ballots are counted and a candidate has been elected, or until the end of the year. However, the last two options cannot occur under the statute—the 10-month limitation by its terms only precludes elections following appointments. An election occurring prior to appointment will be given effect. (*Brown* v. *Hite, supra,* 64 Cal.2d 120, 127; *Caldwell* v. *Bruning, supra,* 64 Cal.2d 111, 119.)

While the Governor's ability to appoint up to election day, and thus to postpone the election, will tend to discourage potential candidates from seeking vacant offices, the Legislature could reasonably determine the 10-month limitation serves a valid public purpose. The provision is no doubt designed to encourage qualified persons to accept municipal court appointments, assuring appointees an opportunity to show their judicial qualifications on the bench and permitting them to run for election thereafter. Unless the Governor's power to appoint during the period following close of nomination and before election is implemented by postponing the election,[2] appointees during that period would be unable to run for the office. It might be very difficult to find qualified attorneys willing to accept appointment, having to give up their law practices to serve for only a half year with no opportunity to be elected to office. The difficulty in filling vacancies from the spring of even numbered years to the end of the electoral process and the potential impairment of administration of justice in our municipal courts during that period may properly be viewed by the Legislature as justifying application of the 10-month limitation to judges appointed after commencement of the election process.

Elections Code section 25305, relied upon by petitioner, and the 10-month limitation, are not in conflict. The section provides a five-day extension of the period for filing nomination papers if the incumbent judge fails to perfect his candidacy within the proper time or dies. The 10-month limitation comes into effect only if the Governor makes an appointment. Section 25305 does not deal with appointments.

Petitioner also urges that Government Code section 71180 abridges the constitutional right to vote. However, the states are free to fill nonlegislative offices by appointment, election, or a combination of

---

[2]The period for nominations closes 83 days before the primary. (Elec. Code, §§ 6499, 25305.)

both. (*Sailors* v. *Kent Board of Education* (1967) 387 U.S. 105, 111 [18 L.Ed.2d 650, 87 S.Ct. 1548]; *Santa Barbara Sch. Dist.* v. *Superior Court* (1975) 13 Cal.3d 315, 345-346 [118 Cal.Rptr. 637, 530 P.2d 605].) When, as here, the Legislature has adopted a combined system, it is apparent that arbitrary lines must be drawn determining whether the elective or the appointive system will prevail. The drawing of such lines does not result in denial of the right to vote.

Today's decision must both frustrate the electoral process and discourage potential candidates from running for office when an existing vacancy is subject to gubernatorial appointment prior to election. However, whether such interference with the electoral process is justified when weighed against the policy calling for able interim judges is a legislative question. The 10-month limitation of section 71180 is absolute on its face, containing no exception for when the appointment occurs after close of the filing period. While consideration of the interests of both electorate and candidates may call for such exception by legislative intervention, the power of this court is to do no more than construe statutes as written. (*Brown* v. *Hite, supra,* 64 Cal.2d 120, 129.)

Therefore, the alternative writ of mandate is discharged and the peremptory writ is denied.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Richardson, J., concurred.