[L.A. No. 31289. Sept. 2, 1980.]

JOHN R. STANTON, Petitioner, v.
LEONARD PANISH, as Registrar-Recorder, etc., et al., Respondents;
EDMUND G. BROWN, JR., as Governor, etc., Real Party in Interest.

COUNSEL

F. John Nyhan, Paul M. Harrigan and Lawler, Felix & Hall for Petitioner.

Bonelli, Wood & Heib, Malcolm H. Mackey and Stanley Sapiro as Amici Curiae on behalf of Petitioner.

John H. Larson, County Counsel, and Edward G. Pozorski, Deputy County Counsel, for Respondent Panish.

George Deukmejian, Attorney General, Richard D. Martland, Assistant Attorney General, and Henry G. Ullerich, Deputy Attorney General, for Respondent Eu and for Real Party in Interest.

## OPINION

**THE COURT.**—Leonard Panish, Registrar-Recorder of the County of Los Angeles, respondent herein, has announced his intention to remove Office No. 3 of the Los Angeles County Superior Court from the November 4, 1980, general election ballot, thereby cancelling the election scheduled for that office. In his opinion cancellation of the election is required by section 16, subdivision (c) (hereinafter section 16(c)) of article VI of the California Constitution because the office became vacant on June 22, 1980, upon the resignation of the incumbent. Petitioner received the greatest number of votes, but less than a majority, in the June 1980 primary in which he was one of five candidates for the office, and therefore became a "run-off" candidate in the November 1980 general election.

Petitioner seeks mandate to compel the respondent registrar-recorder to proceed with the election and to compel respondent March Fong Eu, the Secretary of State, to certify candidates for election and the results thereof. He contends that in circumstances such as these, in which the six-year term of the incumbent judge is expiring, and the election process has commenced with the qualification of candidates to fill the office for the ensuing term prior to the accrual of the vacancy, the Constitution requires that the office be filled by completion of the election process rather than by an appointment under section 16(c). We agree and direct the issuance of a peremptory writ of mandate.

This dispute had its origin in a January 30, 1980, announcement by Judge Roy M. Brown, that he would not be a candidate for reelection to a new term, and would retire on June 21, 1980. His six-year term as the incumbent in Office No. 3 was to expire at the end of 1980.[1] Petitioner with four others qualified as candidates for the office at the June 3, 1980, primary election, and with one other candidate for the November 4, 1980, run-off.

On June 22, 1980, Judge Brown retired. Respondent Panish then notified petitioner that Office No. 3 would not appear on the November ballot because, no candidate having been elected at the primary election, section 16(c) provides that the vacancy thereafter created by the retirement of Judge Brown is to be filled "by election to a full term at the next general election after the January 1 following the vacancy, . . ." A confirmatory letter from the Los Angeles County Counsel to petitioner advised that in counsel's opinion this provision served to "void the upcoming November election for this office as a matter of law." The letter recommended that petitioner examine our opinions in *Anderson* v. *Phillips* (1975) 13 Cal.3d 733 [119 Cal.Rptr. 879, 532 P.2d 1247], and *Pollack* v. *Hamm, supra,* 3 Cal.3d 264, implying that respondent Panish relied on the interpretation and application of section 16(c) in those cases. In our view that reliance was misplaced.

Contrary to respondent's suggestion, *Pollack* and *Anderson* reflect our recognition of a constitutional intent that unless there is express constitutional or statutory provision otherwise, and whenever possible, the succession of superior court judges shall be by popular election. Only if the electoral process cannot be carried out or a vacancy occurs prior to the qualification of a candidate or candidates for an office in the year in which an incumbent's term expires, does section 16(c) permit the postponement of an election for a superior court office beyond the sixth year of a term. That section does not compel cancellation of a scheduled election. It does no more than provide the means by which a vacancy is to be filled if the election cannot proceed, thereby authorizing the appointment of a judge to fill the vacancy until the elected judge takes office.

---

[1]Although the new term does not commence until January 5, 1981, a superior court term is said to expire at the end of the year before which the elected successor is to take office. (See Cal. Const., art. VI, § 16, subd. (c); *Pollack* v. *Hamm* (1970) 3 Cal.3d 264, 273, fn. 6 [90 Cal.Rptr. 181, 475 P.2d 213].)

We are led to the foregoing conclusion by the following reasoning: Section 16, subdivision (b), commands: "Judges of other courts [than the Supreme Court and Court of Appeal] shall be elected in their counties or districts at general elections." Section 16(c) supplements this constitutional directive with respect to superior courts, providing: "Terms of judges of superior courts are 6 years beginning the Monday after January 1 following their election. A vacancy shall be filled by election to a full term at the next general election after the January 1 following the vacancy, but the Governor shall appoint a person to fill the vacancy temporarily until the elected judge's term begins." In *Pollack* we noted that the intent of section 16(c) was that "an opportunity to pass on the qualifications of superior court judges will be available to the electorate no less often than every six years," and we therein recognized our obligation to construe the provision so as to effectuate that intent. (3 Cal.3d 264, 273.)

In *Pollack* we further considered a situation created by the resignation of an incumbent superior court judge. The *Pollack* vacancy was filled by appointment in December 1969, the year before a general election was to be held. Section 16(c) therefore mandated that an election be held for that office in 1970. The appointee and one other candidate qualified to run for the office in the June primary election. The appointee/candidate died prior to the primary, but after the date by which additional candidates might have qualified. The Governor appointed a second person to the vacant office before the primary election. The new appointee, arguing that he had been appointed to fill a new vacancy, sought to have the 1970 election cancelled on the ground that section 16(c) precluded an election prior to the general election following January 1, 1971.

We rejected that claim because the "vacancy" to which section 16(c) referred could be found to be a single vacancy arising upon the incumbent's resignation and continuing until an elected successor took office. By that construction we effectuated the intent of section 16(c), thereby insuring "that the only circumstances in which an election may be postponed beyond the sixth year of the elected incumbent's term will be those in which it is impossible to carry out the full elective process." (3 Cal.3d at p. 273.) Our *Pollack* observation that under this interpretation of section 16(c) more than six years might elapse between elections if a vacancy arose during the year of expiration of an elected incumbent's term, did not constitute a broad holding that the section

precluded an election in all cases in which a vacancy occurs during the final year of an incumbent's term.

Rather, the history of section 16(c) demonstrates that when a vacancy occurs in the last year of the term of an incumbent superior court judge at a time when the full elective process can be conducted, an election for the office shall be held except in those cases in which the vacancy arises and an appointee assumes the office prior to the qualification of one or more persons as candidates for that office. This history, which we discussed at length in both *Pollack* v. *Hamm, supra*, 3 Cal.3d 264, 270-273, and again in *Anderson* v. *Phillips, supra*, 13 Cal.3d 733, 739, confirms that the purpose of the drafters of the second sentence of section 16(c) was not to cause an already scheduled election to be cancelled. The provision was intended only to relieve an appointee to a vacancy arising early in the last year of an incumbent's term, and who assumes office before other potential candidates have qualified, from the burden of standing for election immediately thereafter.

Until section 16(c) was adopted in 1966, former section 8 of article VI had specified that "if the term of an incumbent, elective or appointive, is expiring at the close of the year of a general state election and a vacancy accrues after the commencement of that year and prior to the commencement of the ensuing term, the election to fill the office for the ensuing full term shall be held in the closing year of the expiring term in the same manner and with the same effect as though such vacancy had not accrued." Because the "general state election" at which judicial offices are first placed on the ballot is the primary election (*Pollack* v. *Hamm, supra*, 3 Cal.3d 264, 268, fn. 3) this provision had the effect of forcing appointees to such vacancies who assumed office prior to a scheduled election and were not already candidates to attempt immediately to qualify and seek election if they wished to retain the office beyond the end of that year. The general rule, to which this part of former section 8 was an exception, was that an appointee need not stand for election in the year of the accrual of the vacancy. (*Barber* v. *Blue* (1966) 65 Cal.2d 185, 187 [52 Cal.Rptr. 865, 417 P.2d 401].) After we noted in *Barber* that this exception was operative only during the early part of the year, the drafters of the 1966 constitutional revisions eliminated it from the proposed successor amendment, section 16(c). The purpose of that change, however, was solely to relieve appointees who assumed office prior to a scheduled election, but in time to qualify for inclusion on the ballot, of the need to stand for election. We find no in-

tent to deprive the electorate of an opportunity to fill the office in situations in which the vacancy accrued after the date on which a candidate for the office had qualified for inclusion on the ballot.

Our holding in *Fields v. Eu* (1976) 18 Cal.3d 322, 326 [134 Cal.Rptr. 367, 556 P.2d 729], is not contrary. Although in summarizing the usual operation of section 16(c) we observed in *Fields* that "if the vacancy arises at any time in an election year, the office will not be placed on the ballot until the next election year, i.e., two years later," we were not therein presented with the issue before us. The sole question in *Fields* was how section 16(c) operated with respect to newly created judicial offices, rather than the section's application to vacancies arising in the last year of an incumbent's term after the date on which one or more candidates have qualified and an election has been scheduled. In these latter situations the elective process must continue.

Our interpretation of the effect of the constitutional amendment is further supported by the following language in the declaration of Judge Bruce W. Sumner, the former chairman of the California Constitution Revision Commission under whose auspices section 16(c) was drafted:

"The 1966 revision to article VI, by which the current Section 16(c) was adopted, was proposed for the sole purpose of eliminating the requirement...that a judge appointed in the last year of the term of an office stand for election that same year. This was the only change which was discussed by the Commission and the only change which we considered....The only change discussed in any of the hearings held by each house on the proposed amendment...was in the context of eliminating the requirement that an appointee stand for election to an office in the year of his appointment to that office."

 While such evidence, of course, is not conclusive, it may be considered in the absence of evidence that the electorate may have had reason to understand the provision differently. (See *Mosk v. Superior Court* (1979) 25 Cal.3d 474, 495-496 [159 Cal.Rptr. 494, 601 P.2d 1030]; *Friends of Mammoth v. Board of Supervisors* (1972) 8 Cal.3d 247, 257-258 [104 Cal.Rptr. 761, 502 P.2d 1049]; *Tillie Lewis Foods, Inc. v. City of Pittsburg* (1975) 52 Cal.App.3d 983, 1006-1007 [124 Cal.Rptr. 698].)

Even in the absence of such evidence regarding the intended scope of section 16(c) we could not accept the interpretation proposed by respon-

dent Panish. To do so we would first have to assume that even though section 16(c) does not expressly conflict with section 16, subdivision (b), in all cases in which a vacancy occurs during the final year of a term, section 16(c) overrides the right of the electorate to fill a superior court office by election at intervals of no more than six years. This interpretation would be unreasonable.

■ The right of suffrage, protected by article II of the California Constitution, is a fundamental right "preservative of other basic civil and political rights." (*Reynolds* v. *Sims* (1964) 377 U.S. 533, 562 [12 L.Ed.2d 506, 527, 84 S.Ct. 1362]; see also, *Castro* v. *State of California* (1970) 2 Cal.3d 223, 234 [85 Cal.Rptr. 20, 466 P.2d 244].) "Every reasonable presumption and interpretation is to be indulged in favor of the right of the people to exercise the elective process." (*Hedlund* v. *Davis* (1956) 47 Cal.2d 75, 81 [301 P.2d 843].)

When, as here, language that appears unambiguous on its face is shown to have a latent ambiguity, customary rules of construction also support our conclusion. ■ Constitutional provisions, like statutes, must be harmonized to avoid conflict (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 596 [96 Cal.Rptr. 601, 487 P.2d 1241]) and construed to avoid absurd and unfair consequences (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 245 [149 Cal.Rptr. 239, 583 P.2d 1281]; *Fields* v. *Eu, supra,* 18 Cal.3d 322, 328). Our interpretation of section 16(c) at once gives the greatest possible effect to section 16, subdivision (b), and avoids the absurd and unfair result which would follow if the section were interpreted to compel cancellation of scheduled elections. Were respondents' interpretation adopted, a retiring incumbent dissatisfied with the candidates for, or the outcome of, a contest for the office could cause an election to be cancelled by an appropriately timed resignation. Even in cases such as this where no such motivation impelled the retirement of the incumbent, the potential unfairness is manifest to those candidates who have expended the considerable time and resources necessary in a contested election. We cannot accept such an interpretation as being either consistent with the intent of the voters who adopted section 16(c) or compelled by its language or history.

■ We therefore conclude that the resignation or retirement of an incumbent superior court judge during the final year of his term, at a

time when another person has qualified as a candidate for the office, does not compel cancellation of the scheduled election for that office.[2]

Let a peremptory writ of mandate issue directing respondent registrar-recorder to include the candidates qualified for Office No. 3 of the Los Angeles County Superior Court on the ballot for the November 4, 1980, general election and to accept candidates' statements, and directing respondent Secretary of State to certify Office No. 3 and the candidates therefor for inclusion on the ballot for that election.

Each party shall bear his or her own fees and costs incurred in connection with this proceeding. Petitioner's request for an award of attorney's fees pursuant to Code of Civil Procedure section 1021.5 is denied.

The judgment is final forthwith.

**BIRD, C. J.**—I must respectfully dissent from this "By the Court" opinion for two important reasons.

I

The issue before this court is a relatively simple one. The state Constitution provides that if a vacancy occurs in a superior court judgeship in an election year, the Governor is to appoint the replacement who then must run for that position at the next general election. (Cal. Const., art. VI, § 16, subd. (c).) The question presented is whether this court should completely rewrite this section to achieve a result that the court deems preferable. I submit this is not our function and the attempt to do so is without legal justification.

The language of the Constitution is clear and unambiguous. "A vacancy shall be filled by election . . . at the next general election *after the January 1 following the vacancy . . . .*" (*Ibid.*, italics added.) In the

---

[2]There are, of course, alternative methods by which a candidate may qualify to run for a superior court office. (See, e.g., Elec. Code, §§ 25301, 25304, 25305.) If a vacancy occurs during the last year of an incumbent's term after the elective process had commenced by the qualification of any candidate, including an unopposed incumbent who need not appear on the ballot (Elec. Code, § 25304) that process must continue. Only if no election can be held because no candidate has qualified for the primary or general election does the appointment provision of section 16(c) operate to authorize an appointment for a period extending beyond the date on which the incumbent's term expires.

present case, the incumbent judge retired in June of 1980. Under the clear language of the Constitution, that vacancy must be filled by the exercise of the Governor's appointment power. The appointee must then stand for election in June of 1982.

Even a cursory review of the decisions issued by this court in the last 10 years reveals that when a vacancy occurs in the same year as the general election, the vacancy must be filled by the Governor consistent with article VI, section 16, subdivision (c). Consider the following language from this court's decision in *Fields* v. *Eu* (1976) 18 Cal.3d 322, at page 326 [134 Cal.Rptr. 367, 556 P.2d 729]. "[I]f the vacancy occurs during a year in which there is no general election, the office will appear on the June primary ballot of the immediately following year; but if the vacancy arises at any time in an election year, the office will not be placed on the ballot until the next election year, i.e., two years later." Further, in *Pollack* v. *Hamm* (1970) 3 Cal.3d 264 [90 Cal.Rptr. 181, 475 P.2d 213], relied on in today's "By the Court" opinion, this court stated that *"only if the vacancy arises in the year of expiration of the elected incumbent's term*, or . . . [if] an unopposed incumbent die[s] in an election year at a time when it is no longer possible to carry out that process, may more than six years elapse between elections or opportunity for election for the office." (*Pollack* v. *Hamm, supra*, 3 Cal.3d at p. 273, fn. omitted, italics added.) Such language scarcely supports the conclusions reached in the present "By the Court" opinion.

Again in 1975, this court stated in *Anderson* v. *Phillips* (1975) 13 Cal.3d 733, at page 739 [119 Cal.Rptr. 879, 532 P.2d 1247], that the revision in 1966 of article VI, section 16, subdivision (c) "was to *eliminate* the requirement that an election be held during the last year of an incumbent's term if a vacancy accrues during that year, and to assure that the appointee will not have to stand for election until the general election two years hence." (Fn. omitted, italics added.) The court in that case went on to point out that the obvious purport of the 1966 revision of the Constitution was "to extend [the rule] to all vacancies arising during the closing year of an elected incumbent's term." (*Id.*, at p. 740.)

A careful review discloses that stripped of its verbiage, this "By the Court" opinion is essentially bottomed on a letter written 14 years after the fact by a member of the California Constitution Revision Commission. The great deference accorded this nunc pro tunc expression of

intent represents a new departure for this court in interpreting provisions of the Constitution. Unfortunately, it is a procedure of dubious validity. In the past, this court has been "reticen[t] to rely on statements made by individual members of the Legislature as an expression of the intent of the entire body." (*Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 258 [104 Cal.Rptr. 761, 502 P.2d 1049].) Indeed, "In construing a statute we do not consider the motives or understandings of individual legislators who cast their votes in favor of it. . . . Nor do we carve an exception to this principle simply because the legislator whose motives are proferred actually authored the bill in controversy." (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 589 [128 Cal.Rptr. 427, 546 P.2d 1371], citations omitted.) Nor is the present case one which gives evidence of more than the personal understanding of the letter's author. (*Id.*, at p. 590.) Now, we are asked to accept without question the declaration of one member[1] of an 80-member commission, 14 years after the event.

There is no contemporaneous expression that supports this particular interpretation. To the contrary, former article VI, section 8, required that "if the term of an incumbent, elective or appointive, is expiring at the close of the year of a general state election and a vacancy accrues after the commencement of that year and prior to the commencement of the ensuing term, the election to fill the office for the ensuing full term shall be held in the closing year of the expiring term in the same manner and with the same effect as though such vacancy had not accrued." The comment that accompanied the Commission's proposed constitutional revision indicates that "[t]he Commission deleted that provision because it is only operable during the very early part of an election year." (Cal. Const. Revision Com., Proposed Revision (1966) p. 94.) As respondent points out, nowhere in any of that language is there any indication that the Constitution Revision Commission intended to say that the office could only be filled by election in the last year of the term regardless of when or whether a vacancy occurred or whether it was filled by the appointment process.

The "By the Court" opinion speaks in lofty terms of the "right of suffrage." (By the Court opn., *ante*, at p. 115.) No one disagrees with

---

[1] This individual also sits on the same superior court bench to which the petitioner in the companion case aspires. The Los Angeles Daily Journal reported on June 26, 1980, that this same individual "had requested the Legislative Counsel's opinion on the matter through one of his state representatives." (*Election Ruling by Legislative Counsel Backs L.A. Opinion*, L.A. Daily Journal (June 26, 1980) p. 1.)

that. However, a closer examination of the opinion illustrates that this decision does not advance "'the right of the people to exercise the elective process.'" (By the Court opn., *ante*, at p. 115.) Rather, it encourages manipulation of the election process.

Petitioner, in his amended petition, inadvertently· points out the real danger. He admits he "did not desire to challenge an incumbent judge seeking reelection because petitioner's doing so might damage existing and future professional relationships and because petitioner believed himself more likely to win the election if he ran for an open seat." It is a generally recognized fact that individuals who run for an open seat have different strategic motivations than those who would run against an incumbent judge. In rewriting the clear intent of article VI, section 16, this court encourages a system which would thwart, not advance, the election process. For example, incumbents, who did not like the Governor and who wished to select their own replacements, could inform only the person of their choice of their intent to resign. The resignation could then be timed so that under the law no one else would have adequate notice to be able to run for the seat.

There is an additional problem that this court recognized in *Barton* v. *Panish* (1976) 18 Cal.3d 624, at page 629 [135 Cal.Rptr. 65, 557 P.2d 497]. When a judge retires after the election process has started, "[u]nless the Governor's power to appoint . . . is implemented by postponing the election, appointees during that period would be unable to run for the office. It might be very difficult to find qualified attorneys willing to accept appointment, having to give up their law practices to serve for only a half year with no opportunity to be elected to office." (Fn. omitted.) This principle was applied in a number of cases wherein this court allowed the Governor's appointee to remain in office even though a vacancy occurred in a general election year and the appointee did not stand for election until the next general election.[2] (See *Anderson* v. *Phillips, supra*, 13 Cal.3d 733; *Zecher* v. *Cory* (1975) 13 Cal.3d 743 [119 Cal.Rptr. 885, 532 P.2d 1253]; *French* v. *Jordan* (1946) 28 Cal.2d 765 [172 P.2d 46].)

Far from promoting the right of suffrage, the interpretation advanced in this "By the Court" opinion deprives the public of the opportunity to vote for an experienced judge whose background and qualifications for

---

[2]Such a result does not in any way interfere with the right of the electorate to scrutinize the qualifications of an incumbent judge no less often than every six years, as article VI, section 16, subdivision (c) contemplates.

the seat in question have been reviewed by the State Bar. For the several reasons expressed above, the election process will not be enhanced but will suffer as a result of this unfortunate opinion.

## II

I dissent as well to the form of this opinion. In *In re Perrone C.* (1979) 26 Cal.3d 49, at pages 58-59 [160 Cal.Rptr. 704, 603 P.2d 1300], I stated my views on the undesirable results, due to lack of accountability, that the use of "By the Court" opinions breeds. It is sound policy for this court to keep the use of "By the Court" opinions to a minimum.[3]

The important issues that come before us should not be decided anonymously. The litigants, their counsel, and the public have a right to know whose words they are reading. "By the Court" opinions frustrate the exercise of that right. Further, they run counter to the respected principles of openness in government and personal accountability of public officials. All of these problems are compounded in the instant case since counsel were asked by the court to waive oral argument.

I question whether the parties have been accorded procedural due process when they were not informed prior to their waiver that the opinion would be issued as a *per curiam*. Ordinarily, I would not raise this issue out of deference to the court, but I firmly believe this procedure to be of questionable fairness. For all of these reasons, I respectfully, but strongly disagree.

**TOBRINER, J.**—I respectfully dissent. In my view the language of the controlling constitutional provision, and the past authorities of this court construing that provision, support the determination of the Los Angeles registrar that an election should not be held in November 1980 for the superior court seat at issue here.

Article VI, section 16, subdivision (c) [hereafter section 16(c)] of the California Constitution provides that "[a] vacancy [in the superior court] shall be filled by election to a full term *at the next general election after the January 1 following the vacancy*, but the Governor shall

---

[3]I appreciate that there are valid reasons for issuing "By the Court" opinions in attorney and judicial disciplinary proceedings. However, outside of the disciplinary context, those reasons do not apply.

appoint a person to fill the vacancy temporarily until the elected judge's term begins." In the present case the "vacancy" in the judicial office arose on June 22, 1980, when the incumbent resigned his office. Thus, pursuant to the constitutional provision, the office is to be filled by election "at the next general election after the January 1 following the vacancy," i.e., the first general election *after January 1, 1981*, and not at the November 1980 general election.

Although the majority purport to find a latent ambiguity in the terms of the constitutional provision, in my view the provision is clear on its face. Moreover, the past authorities of this court analyzing the provision at issue uniformly support this "plain reading" of the provision. Thus, in *Anderson* v. *Phillips* (1975) 13 Cal.3d 733, 739 [119 Cal.Rptr. 879, 532 P.2d 1247], for example, our court explained the 1966 revision of section 16(c), which resulted in the present provision, in the following terms: "[T]he effect of the 1966 revision *was to eliminate the requirement that an election be held during the last year of an incumbent's term if a vacancy accrues during that year*, and to assure that the appointee will not have to stand for election until the general election two years hence." (Italics added.) Similarly, in both *Pollack* v. *Hamm* (1970) 3 Cal.3d 264, 273 [90 Cal.Rptr. 181, 475 P.2d 213] and *Fields* v. *Eu* (1976) 18 Cal.3d 322, 326 [134 Cal.Rptr. 327, 556 P.2d 729], we expressly stated that under section 16(c) "if the vacancy arises *at any time* in an election year, the office will not be placed on the ballot until the next election year, i.e., two years later." (Italics added.)

In the face of these uniform pronouncements, and without any supporting authority whatsoever, the majority conclude that section 16(c) should not be interpreted as written but instead should be read to draw a distinction between vacancies in a superior court office which occur early in the last year of a judge's term, prior to the commencement of the electoral process, and vacancies that occur later, "at a time when another person has qualified as a candidate for the office." (*Ante,* pp. 115-116.) With respect to the latter vacancies, the majority conclude that the constitutional provision should not be applied according to its terms, but should instead be read as compelling an immediate election. In *Anderson* v. *Phillips, supra,* however, our court explicitly recognized that section 16(c) "makes no distinctions between vacancies arising before or after a scheduled election...." (13 Cal.3d at p. 740.) The majority have apparently created the proposed distinction out of thin air.

The majority attempt to justify their novel reading of the provision by suggesting that a principal objective of section 16(c) is to require an election whenever the electoral process can feasibly be carried out. If that were the objective of the section, it would logically follow that an election should be held even when a vacancy occurs before the electoral process begins. The majority concede, however, that under such circumstances section 16(c) mandates a postponement of the election, in order to assure that the appointee has an adequate time to make a record before he must stand for election. Because the provision draws no distinction between those vacancies which occur before the electoral process begins and those vacancies which occur thereafter, the same rationale which justifies the postponement of an election in the former situation similarly calls for a postponement in the latter circumstance. (Cf. *Barton* v. *Panish* (1976) 18 Cal.3d 624, 629 [135 Cal.Rptr. 65, 557 P.2d 497].)

In sum, I believe the majority's interpretation of section 16(c) is untenable in light of both the clear language of the provision and the uniform interpretation that such language has been given in numerous prior decisions of this court. I would deny the requested writ.