TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

------------------------------

| | | |
|---|---|---|
| OPINION | : | No. 87-101 |
| | : | |
| of | : | <u>MAY 27, 1987</u> |
| | : | |
| JOHN K. VAN DE KAMP | : | |
| Attorney General | : | |
| | : | |
| RODNEY O. LILYQUIST | : | |
| Deputy Attorney General | : | |

----------------------------------------------------------------

THE CALIFORNIA TRANSPORTATION COMMISSION has requested an opinion on the following questions:

1. Does the phrase "exclusive public mass transit guideways" as used in article XIX of the Constitution include exclusive bus-carpool transitways?

2. Does the phrase "exclusive public mass transit guideways" as used by the Legislature in defining transit capital improvement projects eligible for funding from the transportation planning and development account of the state transportation fund include exclusive bus-carpool transitways?

CONCLUSIONS

1. The phrase "exclusive public mass transit guideways" as used in article XIX of the Constitution does not include exclusive bus-carpool transitways.

2. The phrase "exclusive public mass transit guideways" as used by the Legislature in defining transit capital improvement projects eligible for funding from the transportation planning and development account of the state transportation fund does not include exclusive bus-carpool transitways.

ANALYSIS

The two questions presented for resolution concern exclusive bus-carpool "transitways." These are roads upon which travel is restricted to buses and other motor vehicles carrying three or more persons (sometimes called high occupancy vehicles). The roads may at times be entirely separate from highways used by single occupancy vehicles. No track or other guidance system is part of the roadway; the bus or automobile driver must maneuver the vehicle at all times, even within a transitway separated by a grade from other highway lanes. We are asked whether these transitways are "exclusive public mass transit guideways" as that term is used in article XIX of the Constitution and in Public Utilities Code section 99317. We conclude that they are not.

1. Article XIX of the Constitution

Section 1 of Article XIX of the California Constitution states:

"Revenues from taxes imposed by the state on motor fuels for use in motor vehicles upon public streets and highways, over and above the costs of collection and any refunds authorized by law, shall be used for the following purposes:

"(a) The research, planning, construction, improvement, maintenance, and operation of public streets and highways (and their related public facilities for nonmotorized traffic), including the mitigation of their environmental effects, the payment for property taken or damaged for such purposes, and the administrative costs necessarily incurred in the foregoing purposes.

"(b) The research, planning, construction, and improvement of exclusive public mass transit guideways (and their related fixed facilities), including the mitigation of their environmental effects, the payment for property taken or damaged for such purposes, the administrative costs necessarily incurred in the foregoing purposes, and the maintenance of the structures and the immediate right-of-way for the public mass transit guideways, but excluding the maintenance and operating costs for mass transit power systems and mass transit passenger facilities, vehicles, equipment, and services." (Emphases added.)

Section 3 provides:

"The Legislature shall provide for the allocation of the revenues to be used for the purposes specified in Section 1 of this article in a manner which ensures the continuance of existing statutory allocation formulas for cities, counties, and areas of the state, until it determines that another basis for an equitable, geographical, and jurisdictional distribution exists; provided that, until such determination is made, any use of such revenues for purposes specified in subdivision (b) of Section 1 of this article by or in a city, county, or area of the state shall be included within the existing statutory allocations to, or for expenditure in, that city, county, or area. Any future

statutory revisions shall provide for the allocation of these revenues, together with other similar revenues, in a manner which gives equal consideration to the transportation needs of all areas of the state and all segments of the population consistent with the orderly achievement of the adopted local, regional, and statewide goals for ground transportation in local general plans, regional transportation plans, and the California Transportation Plan."  (Emphasis added.)

Section 4 states:

"Revenues allocated pursuant to Section 3 may not be expended for the purposes specified in subdivision (b) of Section 1, except for research and planning until such use is approved by a majority of the votes cast on the proposition authorizing such use of such revenues in an election held throughout the county or counties, or a specified area of a county or counties, within which the revenues are to be expended.  The Legislature may authorize the revenues approved for allocation or expenditure under this section to be pledged or used for the payment of principal and interest on voter-approved bonds issued for the purposes specified in subdivision (b) of Section 1."  (Emphasis added.)

Accordingly, if a bus-carpool transitway is included  in the term "public streets and highways" (§ 1, subdiv. (a)) or the term "exclusive public mass transit guideways"  (§ 1, subd. (b)), motor fuel tax proceeds (commonly known as the "gas tax") may be used to fund the construction thereof.  The significant distinction is that prior voter approval must first be obtained if the transitway is in the latter category of "exclusive public mass transit guideways."

The Constitution does not define the terms in question.  The language "public streets and highways" has, however, received considerable attention in our prior opinions.  The basic principle is that those persons subject to the gas tax should be benefited by using the tax proceeds to construct and maintain the public roads upon which they operate their vehicles.  Based upon our prior analyses, we have no hesitancy in including a bus-carpool transitway within the constitutional phrase "public streets and highways."  (See 57 Ops.Cal.Atty.Gen. 142, 143-146 (1974); 56 Ops.Cal.Atty.Gen. 243, 244-247 (1973); 47 Ops.Cal.Atty.Gen. 28, 30-31 (1966); 27 Ops.Cal.Atty.Gen. 15, 20 (1956); 22 Ops.Cal.Atty.Gen. 49, 50-51 (1953).)

Is such a transitway also an "exclusive public mass transit guideway"?  No prior opinions of this office or reported court decisions provide an answer.  By using dictionary definitions, it may be argued that the phrase is limited ("exclusive") to a publicly owned ("public") channel controlling the line of motion ("guideway") for conveyances ("transit") carrying large numbers of people ("mass"). (See Webster's New Internat. Dict. (3d ed. 1971), pp. 793, 1009, 1388, 1836, 2428.)  A road upon which private automobiles may travel if containing three occupants would appear not to meet this definition in several respects.

Of particular significance is the definition of "guideway": "a channel, slot, or track in which something is fitted so that the line of motion is controlled."  (Webster's, supra, p. 1009.)

It is not the operator of the vehicle who controls the line of motion but rather the channel, slot, or track. With respect to the proposed bus-carpool transitway, the vehicle operator would be able to maneuver the vehicle while on the transitway. Consequently the transitway would not be a guideway.

The Constitution is to be given a "practical, common-sense construction . . . in accordance with the natural and ordinary meaning of its words." (Amador Valley Joint Union High School Dist. v. State Bd. of Equalization (1978) 22 Cal.3d 208, 245; accord ITT World Communications, Inc. v. City and County of San Francisco (1985) 37 Cal.3d 859, 865.) Here the ordinary and common usage of the words contained in article XIX of the Constitution precludes a finding that a bus-carpool transitway is an exclusive public mass transit guideway.

This determination is supported by the purposes for which the phrase "exclusive public mass transit guideways" was incorporated into the Constitution. In analyzing "the intent and objective of the drafters of the provision and the people by whose vote it was adopted" (Mosk v. Superior Court, supra, 25 Cal.3d 474, 495), we may look to "the ballot summary and arguments and analysis presented to the electorate in connection with a particular measure" (Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization, supra, 22 Cal.3d 208, 245-246; see Legislature v. Deukmejian (1983) 34 Cal.3d 658, 673, fn. 14; White v. Davis (1975) 13 Cal.3d 757, 775).

The provision for the funding of exclusive public mass transit guideways was added to the Constitution through an initiative measure approved by the electorate on June 4, 1974. Prior to that time, use of gas tax proceeds was restricted to "highway purposes" defined in the Constitution as:

"The construction, improvement, repair and maintenance of public streets and highways, whether in incorporated or unincorporated territory, for the payment for property, including but not restricted to rights of way, taken or damaged for such purposes and for administrative costs necessarily incurred in connection with the foregoing." (Former art. XXVI, § 1, subd. (a).)

The intent of the "exclusive public mass transit guideways" provision was to expand the use of the gas tax to cover new, different and additional methods of transportation not already included within the term "public streets and highways." By so construing the language, we give it meaning and substance. (See Pacific Legal Foundation v. Unemployment Ins. Appeals Bd. (1981) 29 Cal.3d 101, 114; Stanton v. Panish (1980) 28 Cal.3d 107, 115; Serrano v. Priest (1971) 5 Cal.3d 584, 596.) In accordance with this construction are the following statements contained in the voters' pamphlet: (1) "Extends present use of revenues from motor vehicle fuel taxes," (2) "This measure would broaden the uses for which such revenues may be expended," (3) "Unless we want to put much more of our State under an asphalt blanket, . . . we have to begin moving in a new direction," (4) "To permit the Legislature to use motorists' tax funds for other than motorists' needs," and (5) use of the gas tax for "alternate transportation systems" not involving "roads or highways." (Cal. Voters Pamp., Prim. Elec. (June 4, 1974), pp. 22-23.) As cogently stated by the opponents to the measure:

"If transit systems are constructed, they will be used in very few big cities for very few trips--less than 5%. The remaining trips will be made on roads, as they are now. Smog and congestion will not be noticeably reduced by transit. Rapid transit will cost billions of dollars, and takes many years to build. Our air quality and energy problems must be solved before then. Immediate alternatives such as carpools and buses require good roads." (Id. at p. 22.)

An unmistakable distinction was thus drawn at the time of approving the constitutional amendment between "public streets and highways" used by carpools and buses and "exclusive public mass transit guideways" used by different and dissimilar methods of transportation.

We find no basis upon which to conclude that bus-carpool transitways now require voter approval before gas tax proceeds may be used to fund their construction. They were previously included in the phrase "public streets and highways" and were not transformed by the constitutional amendment into "exclusive public mass transit guideways" necessitating a vote of the people for their construction.[1]

It must be noted, however, that in the Federal Public Transportation Act of 1978 (Pub.L. No. 95-599, 92 Stat. 2745), Congress employed the term "fixed guideway" for purposes of its program to fund state and local mass transportation systems. It defined the term as follows:

"The term 'fixed guideway' means any public transportation facility which utilizes and occupies a separate right-of-way or rails for the exclusive use of public transportation service including, but not limited to, fixed rail, automated guideway transit, and exclusive facilities for buses and other high occupancy vehicles, and also means a public transportation facility which uses a fixed catenary system and utilizes a right-of-way usable by other forms of transportation." (49 U.S.C. § 1608(c); emphases added.)

We reject the argument that the federal definition of "fixed guideway" should be followed in construing article XIX of the California Constitution. The state gas tax provision contained in the Constitution was not patterned after the federal grant program. Indeed, the "exclusive public mass transit guideways" language of article XIX predates the "fixed guideway" terminology of the federal statute. Moreover, the federal grant program has never made a distinction between bus, rail and other public conveyances (see Pub.L. No. 88-365, 78 Stat. § 302, former 49 U.S.C. § 1608(c)), while the same cannot be said of article XIX.

We thus conclude in answer to the first question that the term "exclusive public mass transit guideways" as used in article XIX of the Constitution does not include exclusive bus-carpool

_____

[1]We are informed that 47 counties do not have voter approval as specified in the Constitution, article XIX, section 4.

transitways.  The transitways are, however, included in the term "public streets and highways" contained in the article.

>    2.  Public Utilities Code Section 99317

>    Public Utilities Code section 99317 [2] states:

>    "Funds made available pursuant to subdivision (c) of Section 99315 shall be appropriated to the department for allocation, as directed by the commission, to fund the following types of transit capital improvement projects:

>>    "(a)  Abandoned railroad rights-of-way acquisition.
>>    "(b)  Bus rehabilitation.

>>    "(c)  Exclusive public mass transit guideways and
>>>         rolling stocks.

>>    "(d)  Grade separations.

>>    "(e)  Interface facilities of various transportation
>>>         modes."  (Emphasis added.) [3]

Funds made available pursuant to subdivision (c) of section 99315 come from the transportation planning and development account of the state transportation fund.  (§§ 99310, 99310.5, 99312.) These moneys are not gas tax proceeds (see § 99312; Rev. & Tax. Code, § 7102) and hence are not restricted by the language of article XIX of the Constitution.  Does the phrase "exclusive public mass transit guideways" as used in section 99317 have a different meaning from its use in the Constitution?

>    The Legislature may use the funds in the account as it chooses, subject only to constitutional limitation.  (See Pacific Legal Foundation v. Brown (1981) 29 Cal.3d 168, 180; City and County of San Francisco v. Workers' Comp. Appeals Bd. (1978) 22 Cal.3d 103, 113; Methodist Hosp. of Sacramento v. Saylor (1971) 5 Cal.3d 685, 691.)  It has the authority to define "exclusive public mass transit guideways" as used in section 99317 to include a road or highway or a bus-carpool transitway.  (See In re Marriage of Stephens (1984) 156 Cal.App.3d 909, 913 ["The Legislature has power to prescribe legal definitions of its own language, and when an act passed by the Legislature embodies a definition, it is binding on the courts"].)

---

[2]All references hereafter to the Public Utilities Code are by section number only.

[3]"The department" is the Department of Transportation (§ 99205.5), and "the commission" is the California Transportation Commission (§ 99204.3).

Here, however, the Legislature has not so defined the language of section 99317. Section 99317.6 states:

"Funds made available pursuant to subdivision (c) of Section 99317 shall be allocated to the department, public entities in counties which have approved a proposition pursuant to Section 4 of Article XIX of the California Constitution, and public entities in nonurbanized areas within the jurisdiction of a statutorily created transportation planning agency having jurisdiction over portions of two counties, for public mass transit guideways and rolling stock."

The Legislature has referred to article XIX of the Constitution when designating the recipients of the funds made available under section 99317, subdivision (c). It has similarly referred to article XIX in other contexts when using the term "exclusive public mass transit guideway." (See, e.g., Sts. & Hy. Code, § 199.)

Furthermore, in section 99317.2 the Legislature has distinguished a "busway" from an "exclusive public mass transit guideway":

"Funds made available pursuant to subdivision (a) of Section 99317 shall be allocated for the acquisition of only those rights-of-way of abandoned railroad lines that can be developed for busway or exclusive public mass transit guideway projects."

If the Legislature had intended for an exclusive public mass transit guideway to include a busway under the terms of section 99317, different language in section 99317.2 could have easily so provided. Instead, the wording of section 99317.1 suggests that the two terms signify different types of projects.

We have found no indication in the legislative history of section 99317 that the statutory phrase "exclusive public mass transit guideways" is to have any meaning other than its constitutional meaning.

"[T]he various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." (People v. Black (32 Cal.3d 1, 5; accord People v. Craft (1986) 41 Cal.3d 554, 560.) "[E]very statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect." (Moore v. Panish (1982) 32 Cal.3d 535, 541.)

In answer to the second question, therefore, we conclude that the phrase "exclusive public mass transit guideways" as used by the Legislature in defining transit capital improvement projects eligible for funding from the transportation fund does not include exclusive bus-carpool transitways.