[No. C010247. Third Dist. Sept. 25, 1991.]

DANIEL E. LUNGREN et al., Petitioners, v.
GRAY DAVIS, as Controller, etc., Respondent.

808

---

COUNSEL

Corrado & Newton and R. Zaiden Corrado for Petitioners.

Lawrence E. Gercovich, D. Robert Shuman and Richard J. Chivaro for Respondent.

---

OPINION

**SPARKS, Acting P. J.**—The Constitution of California decrees that "A judge of a court of record may not practice law and during the term for which the judge was selected is ineligible for public employment or public office other than judicial employment or judicial office, . . ." (Cal. Const., art. VI, § 17.) In this original proceeding on petition for writ of mandate we are called upon to determine whether this provision applies to a person who was appointed to fill a vacancy in the office of superior court judge, and who was thereafter elected to a full term as superior court judge, but resigned before the commencement of his elective term. Under these circumstances we conclude that the former judge has never entered upon a term and that the constitutional disqualification therefore does not apply in his case. Consequently, the petitioner, M. David Stirling, a former appointed judge, is eligible for the public office of chief deputy attorney general of California.

FACTS

The facts are straightforward and undisputed. In 1988 William K. Morgan was elected to the office of judge of the Superior Court of Sacramento

County for a six-year term to commence in January 1989 and expire in January 1995. After commencing his term, Judge Morgan resigned on August 31, 1989. In November 1989, petitioner Stirling was appointed to fill the vacancy thus created. Stirling then assumed the office and undertook his new judicial duties. In 1990 he filed for election to the office of superior court judge. No opposition candidates filed for that office and Stirling's name consequently did not appear on the ballot. (See Cal. Const., art VI, § 16, subd. (b); Elec. Code, § 25304.) Following the election, Stirling was certified as elected to a six-year term as judge of the superior court to commence on January 7, 1991.

In the 1990 General Election petitioner Daniel E. Lungren was elected to the office of Attorney General of the State of California for a term to commence on January 7, 1991. In December 1990, Lungren announced that upon the commencement of his term of office he would appoint Stirling to the position of chief deputy attorney general of California.[1] Stirling announced that in December 1990 he would resign from the office of superior court judge and would not commence the six-year term for which he had been elected.

In December 1990, Lungren asked the Governor to request an opinion from then-Attorney General John Van de Kamp on the question whether Stirling would be eligible for the position of chief deputy attorney general after resigning from the office of superior court judge. The Governor made such a request. By letter opinion dated December 26, 1990, the Attorney General concluded that Stirling would not be eligible for public office or employment until at least January 1993, when another person could be elected and assume the office of superior court judge to which Stirling had been elected.

Respondent Gray Davis, the Controller of the State of California (Controller), has expressed agreement with the opinion of the Attorney General and on that basis has refused to issue warrants to pay the salary of Stirling as chief deputy attorney general.[2] Lungren and Stirling have petitioned for a

---

[1] It is indisputable that the position of chief deputy attorney general constitutes a "public employment or public office" within the meaning of section 17 of article VI of the California Constitution. (See, e.g., Gov. Code, §§ 1000, 1001; *Abbott* v. *McNutt* (1933) 218 Cal. 225, 229 [22 P.2d 510, 89 A.L.R. 1109].)

[2] Lungren and Stirling filed their petition for a writ of mandate before they took office. They alleged that the Controller had a duty to adhere to the opinion of the Attorney General and on that basis would refuse to issue salary warrants. The Controller filed his return to the alternative writ of mandate after Lungren and Stirling took office. There he denies that he has a duty to adhere to the Attorney General's opinion, but he expresses agreement with the

writ of mandate to declare that Stirling is eligible for the position of chief deputy attorney general and to direct the Controller to issue warrants for the payment of his salary while he holds that position. We issued an alternative writ of mandate to resolve this dispute. In his return and answer to the petition for writ of mandate the Controller has adopted the Attorney General's opinion as his legal position.

## DISCUSSION

Article VI of our state Constitution provides for the judicial branch of government.[3] Section 16 of this article deals with the election and appointment of judges of the Supreme Court, the Court of Appeal, and the superior court, defines their terms and provides for filling vacancies in those courts. In relevant part, subdivision (c) of this section defines the term of a superior court as follows: "Terms of judges of superior courts are 6 years beginning the Monday after January 1 following their election." Section 17 prohibits the practice of law by judges of courts of record and declares that they are ineligible for nonjudicial public employment or office, except part-time teaching, during their terms. Section 17 reads: "A judge of a court of record may not practice law and during the term for which the judge was selected is ineligible for public employment or public office other than judicial employment or judicial office, except a judge of a court of record may accept a part-time teaching position that is outside the normal hours of his or her judicial position and that does not interfere with the regular performance of his or her judicial duties while holding office. A judge of a trial court of record may, however, become eligible for election to other public office by taking a leave of absence without pay prior to filing a declaration of candidacy. Acceptance of the public office is a resignation from the office of judge. [¶] A judicial officer may not receive fines or fees for personal use. [¶] A judicial officer may not earn retirement service credit from a public teaching position while holding judicial office."

We note preliminarily that the parties tacitly agree that the word "term" as used in section 17 is defined in section 16. For reasons which we will explain in detail, we join in that definitional assessment. As we shall see,

opinion in issue and states that in the exercise of his independent duties as Controller he will refuse to issue salary warrants in the absence of a judicial determination of Stirling's eligibility for his position.

After Lungren took office and Stirling was appointed to the position of chief deputy attorney general, we ordered respondent Controller to issue warrants to Stirling for the monthly salary to which the chief deputy attorney general was otherwise entitled pending the final determination of this writ proceeding.

[3]At all times since the adoption of our first state Constitution in 1849, the constitutional provisions relative to the judicial branch have been contained in article VI. Hereafter unless otherwise specified all section references are to article VI of the version of the Constitution being discussed.

there is nothing in the history of these sections which indicates or even suggests that the word "term" was meant to have one meaning in section 16 and another in section 17. Given this congruent usage of the word, it is apparent, and the parties agree, that the period of constitutional disqualification from public office or employment is dependent upon the meaning of the "term" for which a judge is selected. Two questions are posed concerning the term of a superior court judge by this writ proceeding. The first is whether a person appointed to fill a superior court vacancy serves a term within the meaning of the Constitution. The second is whether an appointed judge who is subsequently elected to, but does not take the oath of office or otherwise assume the office can be said to have commenced a term nevertheless. We answer both of these questions in the negative.

I

We consider first the nature of an appointment to fill a vacancy in the superior court. Section 16, subdivision (b), provides that superior court judges shall be elected in their counties or districts at general elections. Section 16, subdivision (c), provides in full: "Terms of judges of superior courts are 6 years beginning the Monday after January 1 following their election. A vacancy shall be filled by election to a full term at the next general election after the January 1 following the vacancy, but the Governor shall appoint a person to fill the vacancy temporarily until the elected judge's term begins."

As is so often the case with history-laden words of art, the meaning of the word "term" can be brought to light only by archaeological diggings into its legal history. Accordingly, we will briefly recount the various versions of these provisions through the years and the significant appellate decisions construing them.

The Constitution of 1849 provided for a Supreme Court, district courts, county courts, justices of the peace, and permitted the Legislature to establish municipal and other inferior courts. (§ 1.) The position of district judge was analogous, but not identical, to the position of superior court judge today. (§ 6.) It was provided that the first district judges "shall be appointed by the joint vote of the Legislature, at its first meeting, who shall hold [their] office for two years from the first day of January next after [their] election; after which, said judges shall be elected by the qualified electors of their respective districts, at the general election, and shall hold their office for the term of six years." (§ 5.) It was further provided that "The Justices of the Supreme Court and District Judges shall be ineligible to any other office during the term for which they shall have been elected." (§ 16.)

In *People* v. *John B. Weller* (1858) 11 Cal. 77, 86, and *People* v. *Burbank* (1859) 12 Cal. 378, 391 and 392, the Supreme Court held that when a vacancy in the office of district judge was filled by election, the elected judge would be entitled to a full six-year term and not merely the unexpired term of his or her predecessor. The court explained that the various provisions of the Constitution, such as those rendering a judge ineligible for other office and precluding changes in compensation or length of term, were intended to secure the impartiality and independence of the judiciary. The period of tenure was the most essential means to that end. "A lawyer who abandons his business and clients, and surrenders all claims to other official promotion, should have some guarantee of the continuance of his office; but this consideration is nothing compared to the paramount policy of securing the impartiality and independence of the Judges, which can be most safely assured by a tenure of respectable duration." (*People* v. *Burbank, supra*, 12 Cal. at pp. 391-392.)

In the revision of 1879, the Constitution created the superior court system we have for the most part today. (§§ 5, 6.) Under this revision, however, a judge elected after a vacancy in office held office for only the "remainder of the unexpired term." The revision provided: "The term of office of Judges of the Superior Courts shall be six years from and after the first Monday of January next succeeding their election; . . . If a vacancy occur in the office of Judge of a Superior Court, the Governor shall appoint a person to hold the office until the election and qualification of a Judge to fill the vacancy, which election shall take place at the next succeeding general election, and the Judge so elected shall hold office for the remainder of the unexpired term." (§ 6.) It was also provided that justices of the Supreme Court and superior court judges "shall be ineligible to any other office or public employment than a judicial office or employment during the term for which they shall have been elected." (§ 18.) And no judge of a court of record could practice law during his continuance in office. (§ 22.)

In 1924, section 18 was amended to add municipal court judges to the proscription against holding another office. It was enacted to state: "The justices of the supreme court, and of the district courts of appeal, and the judges of the superior courts and of the municipal courts shall be ineligible to any other office or public employment than a judicial office or employment during the term for which they shall have been elected or appointed, and no justice or judge of a court of record shall practice law in any court of the state during his continuance in office."[4]

---

[4]As the Supreme Court has explained, "[t]his section of the Constitution is not intended to, and does not relate to federal offices." (*People* ex rel. *Happell* v. *Sischo* (1943) 23 Cal.2d 478,

In 1926, the experiment with "short term" superior court judges came to an end. Section 8 was adopted to replace former section 6. This new section 8 provided: "The term of office of judges of the superior courts shall be six years from and after the first Monday of January after the first day of January next succeeding their election. A vacancy in such office shall be filled at the next succeeding general state election after the first day of April next succeeding the accrual of such vacancy by the election of a judge for a full term to commence on the first Monday of January after the first day of January next succeeding his election. The governor shall appoint a person to hold such vacant office until the commencement of such term." In the 1926 election the voters were told: " 'The election of judges of the superior court for a "short term," which is sometimes for only a few weeks between election day and the following January, is done away with, and whenever a vacancy occurs prior to April first of an election year a judge will be elected at the general election to hold office for the full term of six years. If a vacancy occur after April first of an election year the time is too short to circulate petitions and satisfactorily prepare for an election at the August primary, and in such case the governor will make an appointment to fill the vacancy until the next election year.' " (See *French* v. *Jordan* (1946) 28 Cal.2d 765, 769 [172 P.2d 46].)

In 1930, an exception was made to the prohibition in section 18 against holding other office or employment. That section was amended to add: "*provided, however,* that a judge of the superior court or of a municipal court shall be eligible to election or appointment to a public office during the time for which he may be elected, and the acceptance of any other office shall be deemed to be a resignation from the office held by said judge." (Italics in orginal.)

Between 1930 and the next relevant revision of these constitutional provisions the Supreme Court decided two cases of significance. In *Bearden* v. *Collins* (1934) 220 Cal. 759 [32 P.2d 604], an elected judge died after April 1 during the last year of his term, which was, of course, an election year for that office. The Governor did not appoint someone to fill the vacancy and the Registrar of Voters commenced proceedings for an election to be held that year. One A. G. Bearden petitioned for a writ of mandate to preclude an election from being held that year, reasoning that the accrual of a vacancy after April of that year precluded an election until the election year two years distant. The court disagreed, finding a constitutional intent "to provide for

493 [144 P.2d 785, 150 A.L.R. 1431].) The State of California, the court observed, "has no power, by Constitution or otherwise, to declare that a judge of the superior court is ineligible to occupy an office in another state or under the government of the United States. It is therefore obvious that section 18 [now § 17] of article VI relates exclusively to the eligibility of judges to hold or occupy other offices which exist under the authority of the State of California." (*Ibid.*)

the filling of vacancies for the remainder of the existing term in which they might occur and that the deferred election for this purpose must be held before the expiration of such term; . . ." (*Id.* at p. 761.) The court added that "it was clearly the intent of the framers that the people should reserve to themselves the right to elect such judges and their successors at regular intervals and that any other mode of filling said offices should be by use of an emergency method to fill vacancies until a general election should be held." (*Id.* at p. 762.) The high court concluded that when a vacancy occurs in the last year of an elected judge's term the election process should continue as though no vacancy had occurred. (*Ibid.*)

In the second case, *French* v. *Jordan, supra,* 28 Cal.2d 765, an elected judge was reelected at the primary election during the last year of his term but died a few days later. Elections officials indicated an intent to place the office on the ballot during the ensuing general election, with the names of any qualified candidate who would be nominated. The petitioner sought to preclude the office from appearing on the ballot. On this occasion the Supreme Court agreed with the petitioner. The court held that with the reelection of the incumbent the electoral processes had spent their force for that year and no election for the office could be held until the next succeeding election year. In response to the argument that the death of the incumbent actually created two vacancies, one to the end of his term and one in futuro in the term to which he was reelected, the court stated: "Actually, any 'term' for which Judge Beardsley had been elected ceased to exist when he died. The vacancy in the office is a continuing one which lasts until a new six-year term shall commence in January, 1949, for a person elected at the 1948 election. The situation calls for an appointment to fill the office until the new term commences." (*Id.* at p. 770.) The court overruled the decision in *Bearden* v. *Collins, supra,* 220 Cal. at page 759 to the extent it was inconsistent. (*French* v. *Jordan, supra,* 28 Cal.2d at pp. 769-770.)

Section 8 was amended in 1948 to provide that the election to fill a vacancy shall be held at the next general election following the January 1 after the vacancy accrues. Then, in 1952 the Constitution was revised to address the *Bearden-French* problem. It was provided that an election to fill a vacancy should be held in the next election year after the January 1 after the vacancy accrues, "except that if the term of an incumbent, elective or appointive, is expiring at the close of the year of a general state election and a vacancy accrues after the commencement of that year and prior to the commencement of the ensuing term, the election to fill the office for the ensuing full term shall be held in the closing year of the expiring term in the same manner and with the same effect as though such vacancy had not accrued."

In *Barber* v. *Blue* (1966) 65 Cal.2d 185 [52 Cal.Rptr. 865, 417 P.2d 401], the Supreme Court was called upon to determine whether under section 8

"the word 'term' refers to the normal six-year term of superior court judges or to the tenure of an appointee, . . ." (65 Cal.2d at p. 187.) In that case an elected judge died during the first year of his term and another person was appointed to fill the vacancy. The appointee filed for election in the next election year and was the only candidate to so file. The appointee died shortly before the primary election at a time when it was too late for other candidates to qualify for the ballot. The petitioner was appointed to succeed him. Elections officials insisted that an election should go forward that year since the deceased appointee would have had to stand for election in that year and was thus in the last year of his "term" when he died.

The *Barber* court rejected the claim that an appointee is serving a term. "It is clear that 'term' is not always to be equated with the tenure of the officer and a person may occupy an office without serving a 'term of office.' " (65 Cal.2d at p. 188.) The word "term" must be interpreted to effectuate the statutory scheme pertaining to the particular office under examination. (*Ibid.*) The court noted that the opinion in *French* held that a vacancy in the office of superior court is continuous until an elected judge commences his term and rejected the view that in the event of the death of an incumbent a new vacancy accrues on the date the incumbent would have commenced a new term had he survived. The *Barber* court noted that in *French* "[t]he court appears to have taken care to use the word 'term' only with reference to a fixed six-year term." (*Barber* v. *Blue, supra,* 65 Cal.2d at p. 190.) This was consistent with the provisions of the Constitution which define a superior court judge's term as six years, and which only permit the Governor to temporarily fill a vacancy. (*Id.* at p. 191.) "It appears that these portions of the section were drafted so as to avoid the denomination of an appointee's tenure as a 'term.' " (*Ibid.*) With respect to the provision which required that an election proceed as though no vacancy occurred when the vacancy occurred in the last year of a term, the court declared: "We do not believe that the passing reference to appointees in the exception is sufficient in itself to overcome the clear implication in the language of other portions of the section and in its history that the word 'term' was intended to refer to a fixed six-year period." (*Ibid.*) Accordingly, the death of an appointee in the year in which he would have to stand for election does not create a vacancy during the last year of a "term," and does not require that the election proceed as though no vacancy occurred. (*Ibid.*)

The Constitution was revised again in 1966. Former section 8 became section 16 and former section 18 became section 17. The 1966 versions of these provisions were, in all relevant aspects, the same as the current

versions, which we have set forth *ante*, at page 810.[5] Section 16 provided, as it does now and as section 8 has since 1926, that the term of a superior court judge is six years beginning on the Monday after January 1 following his or her election. Although a vacancy is to be filled by election, the Governor may appoint a person to fill the vacancy temporarily until an elected judge's term begins. (§ 16, subd. (c).) Section 17 provided that a judge of a court of record may not practice law and is ineligible for public office or employment other than judicial office or employment during the term for which he was selected, but may run for election for public office by taking a leave of absence without pay.

These provisions received further examination by the high court in *Pollack v. Hamm* (1970) 3 Cal.3d 264 [90 Cal.Rptr. 181, 475 P.2d 213]. There an incumbent superior court judge resigned to accept an appointment to the Court of Appeal. The Governor made an appointment to fill the vacancy temporarily. The year following the accrual of the vacancy was an election year and the appointee and one other person qualified as candidates for the office. Before the primary election the appointee died in a boating accident. The Governor appointed the petitioner to fill the vacancy that once again existed. The petitioner assumed office, but it was too late to qualify as a candidate for the upcoming election. At the election the surviving candidate received a majority of the votes. The petitioner sought to have the election declared void on the basis that as a new appointee he should not have to stand for election until the general election next succeeding the January 1 after his appointment.

The *Pollack* court rejected the petitioner's argument. It noted that to agree with him, it would have to find that a new vacancy in a superior court office occurs each time an appointee dies, resigns, or otherwise vacates the office. (3 Cal.3d at p. 272.) This is contrary to the constitutional provisions, which establish that a vacancy occurs when an elected incumbent vacates the office and that an appointee may only fill the vacancy temporarily until an elected judge's term commences. (*Ibid.*) Therefore, if an appointee leaves the office it is the original vacancy to which the Governor may appoint a temporary incumbent; no new vacancy is created by the departure of an appointee. A vacancy commences when an elected judge leaves office and continues until another elected judge commences his term regardless whether the vacancy was temporarily filled by a succession of appointees. (*Id.* at p. 273.) Since in that case the full elective process was not only possible, but was in fact

---

[5]In 1988, section 17 was amended to permit a judge to accept a part-time teaching position outside the normal hours of his or her judicial position. We are not concerned with that exception.

accomplished, the elected judge was entitled to the office and the petitioner's right to the office expired upon commencement of the elected judge's term. (*Id.* at p. 274.)

A dispute with a slightly different twist arose over the office of superior court judge in *Anderson* v. *Phillips* (1975) 13 Cal.3d 733 [119 Cal.Rptr. 879, 532 P.2d 1247]. There, an elected judge whose term was to expire decided not to seek reelection in the 1974 election year. In the 1974 election another person was elected to the office to be vacated by the retiring judge. The sitting judge retired and the Governor appointed the judge-elect to fill the vacancy until his own elective term would begin. The judge-elect took office, but then retired and died before his elective term had commenced. The Governor appointed the petitioner to fill the vacancy and he assumed office. Thereafter, the presiding judge of the superior court, in reliance upon an opinion of the Attorney General (57 Ops.Cal.Atty.Gen. 615 (1974)), determined that the appointment of the petitioner was valid only until the date the elected judge's term would have commenced and that on that date a new vacancy arose which would have to be filled by a new appointment. The petitioner brought an action to establish his right to the office.[6]

The Supreme Court held that the petitioner was entitled to the office until an elected judge could assume office. The court pointed out that the authorities relied upon by the respondent and the Governor were inapposite. Those authorities were concerned with nonjudicial offices which are filled by election or appointment to terms whose dates of commencement and expiration are fixed and definite. (*Anderson* v. *Phillips, supra,* 13 Cal.3d at pp. 737-738.) Under those circumstances it could be said that the terms would run with the office and not with the officer. (*Ibid.*) In contrast, the office of superior court judge is not an office having a term with fixed commencement and termination dates and "a vacancy in a superior court judgeship is a vacancy in an office, not a vacancy in a term." (*Id.* at p. 739.) A vacancy in the office of superior court judge begins when an elected judge leaves office before the expiration of his term and continues until another elected judge commences a new term. An appointee may fill the vacancy temporarily until an elected judge's term begins, "and the term cannot begin until the person elected qualifies and assumes the office; it is apparent that the appointee may continue to fill the vacancy until such time as the vacancy is terminated by the assumption of office by an *elected* judge. If no one is elected; if the

---

[6]This dispute would not likely have arisen had it not been for a change in executive administrations on the same day the judge-elect's term would have begun. It seems likely that the Governor who appointed the petitioner a few days before the judge-elect's term would have begun would have been willing to renew that appointment, if necessary. However, on the same date that the judge-elect's term would have begun a new Governor took office. He was apparently unwilling to appoint the petitioner and he intervened in the action to assert his right to make a new appointment.

person elected dies before assuming office; or if the successful candidate is an incumbent who resigns, retires, or vacates the office by taking an incompatible oath, the vacancy which accrued during the former term continues until a new election is held and the newly elected judge assumes the office. The new term does not come into existence until that time." (*Id.* at p. 740, italics in orginal.) Thus, in *Anderson*, and in the companion case of *Zecher* v. *Cory* (1975) 13 Cal.3d 743 [119 Cal.Rptr. 885, 532 P.2d 1253], which involved similar facts, the high court held that the appointees of the lame-duck governor were entitled to hold office until elected judges could commence their terms.[7]

Another type of election-year dispute arose in *Stanton* v. *Panish* (1980) 28 Cal.3d 107 [167 Cal.Rptr. 584, 615 P.2d 1372], and in the companion case of *Chatterton* v. *Eu* (1980) 28 Cal.3d 123 [167 Cal.Rptr. 593, 615 P.2d 1381], which involved similar facts. In *Stanton*, an elected superior court judge announced that he would not seek reelection in the 1980 election year, and would retire in June of that year. A number of candidates qualified for the primary election and the petitioner and one other candidate qualified for a runoff in the general election. The incumbent judge then retired and elections officials announced that the office would be removed from the general election ballot. It was asserted that the vacancy which occurred with the retirement of the incumbent had the effect of postponing the next election until the general election following the January 1 after the vacancy accrued. The Supreme Court held that the election should be held in 1980. The court noted that the right of suffrage is fundamental and every reasonable presumption and interpretation must be indulged in favor of the right of the people to exercise the elective process. (28 Cal.3d at p. 115.) "We therefore conclude that the resignation or retirement of an incumbent superior court judge during the final year of his term, at a time when another person has qualified as a candidate for the office, does not compel cancellation of the scheduled election for that office." (*Id.* at pp. 115-116.)

In recounting this history we have focused upon constitutional provisions and decisional authorities which have been concerned with the office of superior court judge. While there are many similarities between the office of superior court judge and that of justice of the Supreme Court or Court of Appeal, there are also many differences. For example, appellate justices must stand for election, but they always run unopposed. (§ 16, subd. (d).) Upon their initial election they succeed to the unexpired term of their predecessor, and thereafter their terms are 12 years. (§ 16, subd. (a).) Due to

---

[7]In *Anderson* v. *Philliips, supra*, 13 Cal.3d at page 740, in footnote 5, the court was careful to point out that its holding only applied to persons appointed temporarily to fill a vacancy in the office of superior court judge. No constitutional or statutory provision would permit an elected superior court judge to remain in office after the expiration of his elective term.

these and other differences, authorities concerned with appellate justices are not strictly analogous to superior court judges.

Even less relevant are authorities dealing with municipal court judges. Through the years our evolving Constitution has recognized the increasing importance of these courts in our judicial system. Nevertheless, it has delegated responsibility to the Legislature to provide for the organization of these courts. (§ 5, subd. (a).) Under the statutory scheme for the municipal courts, the office of judge has fixed commencement and termination dates, and an appointment to fill a vacancy is an appointment to fill the unexpired term of the predecessor judge. (Gov. Code, §§ 71145, 71180, subd. (a).) Under this scheme an appointee may serve up to, and in some circumstances in excess of, six years without standing for election. (Gov. Code, § 71180, subd. (a); *Caldwell* v. *Bruning* (1966) 64 Cal.2d 111, 117-120 [48 Cal.Rptr. 849, 410 P.2d 353].) The term of office in the municipal court is a fixed term which relates to the office and not to the tenure of the person who holds the office. (*Caldwell* v. *Bruning, supra,* 64 Cal.2d at p. 117.) Consequently, the provisions applicable to the municipal courts "contrast sharply with those relating to the terms of office of persons appointed as judge of the superior court" (*id.* at p. 118), and render authorities considering municipal court judges inapposite when we are considering the office of superior court judge (*Anderson* v. *Phillips, supra,* 13 Cal.3d at pp. 738-739).

 From the history we have recounted it is clear that the constitutional provisions we are considering have a fundamental purpose of securing the independence and impartiality of the state's primary trial courts. (*People* v. *Burbank, supra,* 12 Cal. at pp. 391-392.) Through the years California has experimented with different means of achieving that end. For example, it went from a system under which judges were elected for full terms regardless when a vacancy occurred to a system whereby they were elected to finish the unexpired term of their predecessors and then back to the full-term election system. California then migrated from a system under which judges were ineligible for public office to one in which they were eligible for public office or employment but would be deemed to have resigned their judicial office by accepting public office or employment, and ultimately to a system under which judges are ineligible for public office or employment but may run for elective office by taking a leave of absence without pay.[8]

But throughout the years one aspect of our system for selecting superior court judges has remained constant. That is the reservation by the people of

---

[8]Until the revision in 1966, which permitted judges to take a leave of absence to run for elective public office, section 9 precluded the Legislature from granting a leave of absence to any judicial officer and provided that prolonged absence from the state worked as a forfeiture of the office.

the right to elect their judges. As the court said in *Bearden* v. *Collins, supra,* 220 Cal. at page 762: "[I]t was clearly the intent of the framers that the people should reserve to themselves the right to elect such judges and their successors at regular intervals and that any other mode of filling said offices should be by use of an emergency method to fill vacancies until a general election should be held." This policy has endured to this day. (*Stanton* v. *Panish, supra,* 28 Cal.3d at p. 115.)

In view of the reservation to the people of the right to elect their superior court judges, the provisions of the Constitution defining the term of office of a superior court judge were carefully drafted to avoid the denomination of an appointee's tenure as a "term." (*Barber* v. *Blue, supra,* 65 Cal.2d at p. 191.) Lest there be any doubt, the 1966 revision of the Constitution modified the definition of a superior court term to eliminate any ambiguity as to the tenure of an appointee. (*Pollack* v. *Hamm, supra,* 3 Cal.3d at p. 272.) Under the Constitution an appointee may fill a vacancy only temporarily until the term of an elected judge can begin. (*Ibid.*) Thus, the tenure of an appointee cannot be deemed a "term" within the meaning of the Constitution. (See *Anderson* v. *Phillips, supra,* 13 Cal.3d at pp. 738-739; *Pollack* v. *Hamm, supra,* 3 Cal.3d at pp. 272-273; *Barber* v. *Blue, supra,* 65 Cal.2d at pp. 190-191; *French* v. *Jordan, supra,* 28 Cal.2d at p. 770.) The appointee is a mere *locum tenens,* that is, a person temporarily holding an office which it is inexpedient to leave unfilled until an elected person can be inducted into the office. (See Black's Law Dictionary (5th ed. 1979) p. 848; Ballentine's Law Dictionary (3d ed. 1969) p. 752; and see *Bearden* v. *Collins, supra,* 220 Cal. at page 762; *People* v. *Ward* (1895) 107 Cal. 236, 239 [40 P. 538].)

In his letter opinion on this question Attorney General Van de Kamp relied upon an earlier published opinion of the Attorney General. (66 Ops.Cal.Atty.Gen. 440 (1983).) That opinion considered whether a superior court judge could resign to accept a public teaching position. The Attorney General concluded that a judge could not evade the disqualification from public office or employment by resigning, and that this applied to both elected and appointed judges. (*Id.* at p. 443.) In reaching that conclusion the Attorney General took note of the use of the word "selected" in section 17. (*Id.* at p. 442.) The word "selected" is certainly a word of greater breadth than the word "elected," but under the circumstances we are not persuaded by the Attorney General's reasoning.[9]

---

[9]The opinion took a wrong turn at the starting line. It asserted that the term of an office relates to the office and not the incumbent and thereafter relied by analogy upon decisional authorities which were concerned with offices having fixed and definite terms. (66 Ops.Cal.Atty.Gen. at pp. 441-443.) Our Supreme Court has consistently rejected such reason-

This situation is similar to the situation considered by the Supreme Court in *Barber* v. *Blue, supra,* 65 Cal.2d 185. The version of the Constitution then in effect provided that an election to fill a vacancy should be held at the general election following the January 1 after the vacancy occurred. It also included an exception which required that an election be held as though no vacancy had occurred if a vacancy occurred in an election year in which the term of an incumbent, "elective or appointive" was expiring. The court observed that the use of the word "appointive" could be construed to include the tenure of an appointee within the meaning of a "term." However, the court noted that the constitutional provisions defining the "term" of a superior court judge were drafted to avoid denominating an appointee's tenure as a "term." The court therefore concluded that the reference to appointive incumbents was intended to ensure that an election would occur at least every six years and not to redefine the "term" of a superior court judge. The court said: "We do not believe that the passing reference to appointees in the exception is sufficient in itself to overcome the clear implication in the language of other portions of the section and in its history that the word 'term' was intended to refer to a fixed six-year period." (*Id.* at p. 191.)

There have been three developments of significance since the adoption of the constitutional provision at issue in *Barber*. First, of course, was the decision in *Barber* itself, specifically holding that the tenure of an appointee is not a "term" within the meaning of the Constitution. Second, in response to the decision in *Barber* the exception considered there was subsequently deleted from the Constitution. (*Pollack* v. *Hamm, supra,* 3 Cal.3d at p. 271.) Finally, the wording of the Constitution was modified to eliminate any ambiguity as to the tenure of an appointee. (*Id.* at p. 272.) As we have seen, the tenure of an appointee is not within the definition of the "term" of a superior court judge. In view of this history, and like the court in *Barber*, we do not believe the use of the word "selected" in section 17 was intended to modify the express and long-standing definition of the "term" of a superior court judge.

While this is sufficient reason for rejecting the view of the Attorney General, there is more. When the provisions of section 17 are placed in their historical perspective the reason the broader word was chosen, and indeed the reason it must be used, becomes apparent. Until 1924, the disqualification provisions of the Constitution applied only to justices of Supreme Court and Courts of Appeal and to superior court judges. Throughout the period preceding 1924 the disqualification provisions applied . during the

ing. (*Anderson* v. *Phillips, supra,* 13 Cal.3d at pp. 738-739; *Barber* v. *Blue, supra,* 65 Cal.2d at p. 190.)

term for which the judge was "elected." In 1924 the disqualification provisions were enlarged to include judges of the municipal courts. As we have previously noted, judges of the municipal courts do serve fixed and definite terms and an appointee to the municipal court is appointed to finish the unexpired term of the previous judge. (Gov. Code, §§ 71145, 71180.) Accordingly, if the disqualification provisions of the Constitution were to be enlarged to include judges of the municipal court, then it was necessary to use a word or phrase of greater breadth than the word "elected." Indeed, in conjunction with the inclusion of municipal court judges in the disqualification provisions of the Constitution, the reference to the term of disqualification was changed from "elected" to "elected or appointed." In the 1966 constitutional revision the disqualification provisions were expanded to include all judges of a court of record and the use of the word "selected" was necessary in order to include all such judges serving a term of office.

In view of the obvious purpose for the use of the word "selected," the clear language of the constitutional provisions defining the term of a superior court judge, and the consistent interpretive decisions of our Supreme Court, we cannot conclude that the word "selected" in section 17 was meant to include an appointee's tenure within the term of a superior court judge. Rather, it is clear that an appointee to the office of superior court judge is not serving a term and is therefore not ineligible for public office or employment beyond the period of his actual service.[10]

The primary thrust of the Attorney General's letter opinion was that Judge Stirling's failure to qualify and assume office for his elective term means that the vacancy in the office, and hence in Judge Stirling's appointive "term," would continue until an elected judge assumed the office. We agree that the vacancy occasioned by Judge Morgan's resignation will continue until an elected judge assumes office, but we disagree that Judge Stirling, a temporary appointee to that office, is serving a "term" which will continue throughout the vacancy.

As we have noted, although the parties disagree over its construction, they tacitly agree that the word "term" as used in section 17 is defined in section 16. We agree. First of all, section 17 itself does not define the word "term." The only definition of that word appears in section 16, the immediately

---

[10]A person charged with the exercise of judicial power may not exercise executive or legislative powers. (Cal. Const., art. III, § 3.) The taking of an oath to perform executive or legislative functions would be incompatible with the office of judge and would constitute a vacation of judicial office. (*Anderson* v. *Phillips, supra*, 13 Cal.3d at p. 739.) Accordingly, except as expressly permitted by the Constitution, an appointee to a superior court vacancy cannot accept public office or employment in the executive or legislative branches of the state while continuing to serve as a judge.

preceding section. ■ "It is a cardinal rule to be applied to the interpretation of particular words, phrases, or clauses in a statute or a constitution that the entire substance of the instrument or of that portion thereof which has relation to the subject under review should be looked to in order to determine the scope and purpose of the particular provision therein of which such words, phrases, or clauses form a part; and in order also to determine the particular intent of the framers of the instrument in that portion thereof wherein such words, phrases, or clauses appear." (*Wallace* v. *Payne* (1925) 197 Cal. 539, 544 [241 P. 879]. See also *Palos Verdes Faculty Assn.* v. *Palos Verdes Pennisula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 658-659 [147 Cal.Rptr. 359, 580 P.2d 1155].) This rule applies even where the particular part of the Constitution under review was added or amended subsequently. "The initiative amendment to the constitution itself must be interpreted in harmony with the other provisions of the organic law of this state of which it has become a part." (*Galvin* v. *Board of Supervisors* (1925) 195 Cal. 686, 692 [235 P. 450].) There can be no question then that words and phrases within article VI of the Constitution must be interpreted in the light of other provisions of that article. (*Edler* v. *Hollopeter* (1931) 214 Cal. 427, 430 [6 P.2d 245]; see also *Barber* v. *Blue, supra,* 65 Cal.2d at p. 188.) Furthermore, as we have seen, there is nothing in the history of these two sections which indicates or even suggests that the word "term" was meant to have one meaning in section 16 and another in section 17.

Despite the parties' agreement on the consistency of the meaning of a "term" in both sections 16 and 17, the opinion of the Attorney General nevertheless equates the vacancy filled by an appointee with a term. Thus, as he sees it, an appointed superior court judge serves a term. This is contrary to the usual meaning of the word "term" even if we were to disregard the decisions involving superior court judges. ■ The word "term" derives from the Latin "terminus," and in a general sense means "that which limits the extent of anything." (86 C.J.S., Term, pp. 602-603.) When used with respect to time or duration, it signifies a fixed period or a determined and prescribed duration. (*Id.* at pp. 604-605.) Accordingly, when used with respect to a public office, the word "term" signifies a fixed and definite term of office. (*Harrold* v. *Barnum* (1908) 8 Cal.App. 21, 22-23 [96 P. 104].) It could be said that whether an officer is serving in an office for a fixed and definite period is the determinative factor whether he is serving a term of office. (*Ibid.*)

■ And when the decisions involving superior court judges are considered, the Attorney General's position is untenable. As the Supreme Court has pointed out, an appointee to the superior court is appointed only to fill a vacancy temporarily on an emergency basis. (*Pollack* v. *Hamm, supra,* 3

Cal.3d at p. 272; *Bearden* v. *Collins, supra*, 220 Cal. at p. 762.) A vacancy cannot be equated with an appointee's tenure; the vacancy runs from elected judge to elected judge regardless whether the office is temporarily held by a succession of appointees. (*Pollack* v. *Hamm, supra*, 3 Cal.3d at p. 273.) Under this scheme, an appointee's tenure is not fixed and definite. In the usual case, the vacancy will exist for a period of six to twenty-nine months. (See *Fields* v. *Eu* (1976) 18 Cal.3d 322, 326, fn. 4 [134 Cal.Rptr. 367, 556 P.2d 729].) But in the unusual case where an election is held but the person elected fails to qualify and assume office, the vacancy can continue indefinitely in periodic increments. (See *Barber* v. *Blue, supra*, 65 Cal.2d at p. 191.) It is generally expected that an appointee will run for election at the next appropriate election. But in some circumstances the vacancy may occur too late in an election year for the appointee to qualify for the election and the appointment does not postpone the election. (See *Pollack* v. *Hamm, supra*, 3 Cal.3d at pp. 264-265.) As a result, an appointee's right to hold office can extend anywhere from one day to an indefinite period. What terminates the appointee's right to hold office is not the expiration of a particular time period, but rather the assumption of office by an elected judge.

In view of the constitutional scheme for the election of superior court judges, the Attorney General's attempt to equate an appointment to a vacancy with a term is anomalous. Rather than concluding that an appointee is not serving a "term" within the meaning of the Constitution, the Attorney General assumes that the appointee has a "term" with accompanying disabilities of indefinite length beyond his actual tenure, because he has no fixed or definite period in which he has the right to the office. This is contrary to precedent in both this state and elsewhere. In short, the very fact that an appointee does not have a fixed and definite time at which his right to hold office, and the accompanying disabilities, will terminate precludes considering him to have a "term" of office within the general meaning of the word.

Moreover, as we have noted, in article VI the "term" of a superior court judge is six years. (§ 16, subd. (c).) The Governor cannot appoint a person to a term, but can only appoint a person to fill a vacancy temporarily. (*Ibid.*) As the Supreme Court has observed, these provisions were carefully written to avoid denominating an appointee's tenure as a "term." (*Barber* v. *Blue, supra*, 65 Cal.2d at p. 191.) Since the constitutional definition of a superior court term is part of the same article as section 17, it should control the meaning of the word "term" as that word is used in section 17, unless a contrary intention plainly appears. ■ "When a statute prescribes the meaning to be given to particular terms used by it, that meaning is generally binding on the courts." (*People* v. *Western Air Lines, Inc.* (1954) 42 Cal.2d

621, 638 [268 P.2d 723]; *Great Lakes Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 156 [137 Cal.Rptr. 154, 561 P.2d 244].) This rule is applicable to the interpretation of constitutional as well as statutory provisions. (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299]; *Stanton* v. *Panish, supra,* 28 Cal.3d at p. 115.) As these authorities demonstrate, in this sense the word "statute" is used broadly to include the entire act of which a definition is a part and not merely a section thereof.

The Supreme Court has consistently held that an appointee to a superior court is not serving a term within the meaning of the Constitution. Although these holdings have dealt with section 16 rather than section 17, it is generally presumed that the framers of laws are aware of the judicial construction of relevant terms. (*Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist. supra,* 21 Cal.3d at p. 659.) After the Supreme Court specifically held in *Barber* that an appointee was not serving a term, the only relevant change in the Constitution was a modification to make it even more clear that an appointee does not serve a "term." (See *Pollack* v. *Hamm, supra,* 3 Cal.3d at pp. 271-272.) Under these circumstances we may safely assume that if the word "term" is to be used differently in section 17 than it is in section 16, the framers of the section would certainly have said so.

Moreover, in construing the meaning of the constitutional provisions at issue, we must consider their purposes. The purpose for avoiding the denomination of an appointee's tenure as a "term" is apparent—our Constitution has consistently reserved to the people the right to elect their judges in all courts of superior court level or above. While there may be a legitimate debate over the wisdom of the elective-judge system, from a constitutional perspective that debate has been resolved in favor of elected judges. Since the first Constitution in 1849, the Governor has never been given the power to appoint a superior court judge to a term of office. Vacancies are to be filled by election, and the Governor may only appoint a person temporarily to fill a vacancy in the superior court until the election. On the only occasion where an ambiguity was perceived, the Constitution was modified to specify more clearly the limited nature of the Governor's participation. (*Pollack* v. *Hamm, supra,* 3 Cal.3d at p. 272.) Similarly, with the exception of the very first district judges for a short term only, the Legislature has never been given the power to appoint judges. The linguistic insistence in the Constitution that judges be elected rather than appointed not only serves to reserve the right of suffrage to the people, it serves to maintain the independence of the judicial branch from undue influence by the executive and legislative branches.

The ineligibility provisions of section 17 also serve the purpose of promoting judicial independence and impartially. In *People* v. *Sanderson* (1866)

30 Cal. 160, the court held that the Legislature could not assign the duties of trustee of the State Library to the Chief Justice. The *Sanderson* court relied primarily upon the separation of powers doctrine. In doing so it said: "One of [the doctrine's] objects seems to have been to confine Judges to the performance of judicial duties; and another to secure them from entangling alliances with matters concerning which they may be called upon to sit in judgment; and another still to save them from the temptation to use their vantage ground of position and influence to gain for themselves positions and places from which judicial propriety should of itself induce them to refrain. In the same spirit was conceived the sixteenth section of Article VI of the Constitution, which declares that [judges shall be ineligible to public office during the term for which they are elected.]." (*Id.* at p. 168.) This was echoed in *Abbott* v. *McNutt, supra,* 218 Cal. 225, with respect to the disqualification provisions which are now in section 17. "Research fails to disclose any case construing or applying that portion of the constitutional provision [dealing with ineligibility]. However, the purpose and policy underlying such a provision is cogently stated by Justice Cardozo in *In re Richardson* 247 N.Y. 401 [160 N.E. 655, 661], wherein the following appears: 'The policy is to conserve the time of the judges for the performance of their work, and to save them from the entanglements, at times the partisan suspicions, so often the result of other and conflicting duties.' In other words, it is intended to exclude judicial officers from such extrajudicial activities as may tend to militate against the free, disinterested and impartial exercise of their judicial functions." (218 Cal. at p. 229.)

Thus, our constitutional scheme for the selection of judges is designed to maintain the independence and impartiality of the judiciary and in this scheme a tenure of respectable duration is "by far the most essential means to the same end." (*People* v. *Burbank, supra,* 12 Cal. at pp. 391-392.) Under this scheme the definition of a "term" of a superior court judge is carefully limited to that of an elected judge. There are provisions at the front end and on the back end of this design to promote judicial independence. On the front end, the Governor and the Legislature are precluded from permanently filling vacancies; vacancies are permanently filled by election. (§ 16, subd. (c).) Instead, the Governor may only temporarily appoint a person to fill the vacancy until an election. As a practical matter the Governor's temporary appointee usually runs in the election and may have an advantage as the appointee. However, if the election is contested the appointee runs as a candidate and not as a judge. (*People* ex rel. *Superior Court* v. *Robinson* (1987) 190 Cal.App.3d 334, 340 [235 Cal.Rptr. 369].) And the provisions for a time gap between the vacancy and the election were not written for the benefit of the Governor or his appointee, but were designed so that the full election process may be carried out. (*Pollack* v. *Hamm, supra,* 3 Cal.3d at pp. 272-274.)

On the back end, once elected, a judge has a guaranteed term of respectable length during which neither the Governor nor the Legislature can interfere with his compensation. In return for these protections, the provisions of section 17 render an elected judge ineligible for other nonjudicial public employment during this protected term. Thus, the limitation of the ineligibility in section 17 to elected judges fosters the policy embedded in article VI and adds further credence to the conclusion that the definition of the word "term" in section 17 is to be found in section 16. Indeed, since a vacancy is of indefinite length and may continue due to factors well beyond the control of the appointee, it would be inequitable and unreasonable to construe a term as including an appointee's incumbency, and thus to impose continuing disabilities beyond the actual tenure of a temporary appointee.

Finally, for purposes of comparison, it may be noted that the closest similarity to the position of a temporary superior court appointee is that of a retired judge sitting by assignment. Under our law, a retired judge who consents may be assigned to temporary duty by the Chief Justice. (§ 6.) That provision is now in the Constitution, but in 1954 it was part of the Judge's Retirement Law. In *Pickens* v. *Johnson* (1954) 42 Cal.2d 399 [267 P.2d 801], a litigant challenged the validity of the actions of a retired judge sitting by assignment. The court rejected all of the various challenges. With respect to the claim that the assignment system violated the six-year term provision of the Constitution, the court said: "In no proper sense is the term of a judge extended by his retirement or by his assignment. Upon his retirement he can no longer of his own volition assume to act as a judge. . . . It is only upon his assignment. . . that he has any judicial power whatsoever, and . . . there has been no unlawful extension of his term of office." (*Id.* at p. 407.) The court also said: "It would be unreasonable to conclude that while not under assignment he would be subject to the conditions that attach to the status and activities of an incumbent judge. When assigned he voluntarily assumes the status of a regular judge and would necessarily be governed by those conditions. For example, when under assignment he could not practice law, and could not be absent from the state longer than 60 days. Others could be noted. While not under assignment there is no good reason to say that he would be subject to the provisions of the Constitution and law of the state made specially applicable to regular incumbent judges." (*Ibid.*, citations omitted.)

The right to exercise judicial authority is temporary with respect to both an appointee and a retired judge sitting by assignment. In each case the powers of a judge are temporarily bestowed upon a person for reasons of expediency, in the case of an appointee because it is inexpedient to leave the office unfilled until the vacancy can be filled by election, and in the case of a retired judge in order to enable the Chief Justice to expedite judicial

business and equalize the work of judges. The tenure of both types of judges has been carefully excluded from the constitutional definition of the term of a superior court judge. Indeed, this distinction between elected judges serving terms and judges acting in a judicial capacity is facially reflected in the section 17 itself. Thus, section 17 draws a distinction between the restrictions imposed upon those serving terms and those acting in the capacity of judge. Under this section, all judges of courts of record, whether appointed, assigned or elected to terms, are barred from practicing law. "A judge of a court of record may not practice law . . . ." (§ 17; see also *Pickens* v. *Johnson, supra,* 42 Cal.2d at p. 407.) On the other hand, the ineligibility for other public office is limited to those judges serving terms. "A judge of a court of record . . . during the term for which the judge was selected is ineligible for public employment or public office . . . ." (§ 17.) For all of these reasons we conclude that the ineligibility under section 17 for other public offices is limited to judges serving elected terms.

Having concluded that Judge Stirling was not serving a term by virtue of his temporary appointment and hence is not ineligible on that account for appointment to the position of chief deputy attorney general, it remains to be determined whether he is disqualified from public office or employment by having been elected to the office despite the fact that he did not assume office for the elective term.

## II

On this second question the Attorney General's letter opinion was more equivocal. However, it was concluded that there is a possibility that the courts might consider Judge Stirling disqualified for an entire six-year period even though he did not assume his elective office. This view was primarily based upon the decision in *Chenoweth* v. *Chambers* (1917) 33 Cal.App. 104 [164 P. 428].)[11] However, the decision in *Chenoweth* involved a state assemblyman who had duly qualified and assumed his elective office and later tried to resign to accept another public position. In those circumstances the court held that the term for which he was disqualified was the term for which he was elected and not merely the period he happened to

[11] The decision in *Chenoweth* involved a member of the Legislature and the disqualification provisions which relate to members of the Legislature. (Cal. Const., art. IV, § 13.) We have noted that decisions involving members of the Legislature and other officers having fixed and definite terms of office are wholly inapposite in considering questions involving the "term" of a superior court judge. On the question whether a judge must assume his elective office before disqualification provisions will apply, decisions involving fixed-term officers are more analogous, although there are still many differences. (Cf. 20 Ops.Cal.Atty.Gen. 229 (1952) and 64 Ops.Cal.Atty.Gen. 164 (1981).) Decisions involving fixed-term officers may have persuasive value on this question.

serve. (33 Cal.App. at p. 107.) *Chenoweth* did not involve a person who was elected but did not enter upon a term of office and thus is not authority for the question we are considering.

The authorities considering the effect of a failure or refusal to qualify and assume an elective office are scant, but they do exist. The most significant authority is the decision in *Rice* v. *National City* (1901) 132 Cal. 354 [64 P. 580]. There, one Smith was elected city marshal for a two-year term with a compensation of $40 per month. Before the end of the initial term of office an ordinance was passed which provided compensation for the city marshal in the sum of $5 per month with a small stipend for each dog impounded. Smith was then reelected to the office of city marshal but he "failed, refused, and neglected . . . to qualify under his said election . . . ." (*Id.* at p. 355.) Due to the failure of the newly elected marshal (himself) to qualify and assume the office and as the city marshal whose term was expiring, Smith was entitled to hold over in office until a successor could be elected or appointed. Eventually the board of trustees enacted a new ordinance providing for a salary of $25 per month for the city marshal. The board then elected and appointed Smith to the office of city marshal and he duly qualified and assumed the office. The plaintiff taxpayers brought an action to preclude payment of the salary of $25 per month, reasoning that the ordinance improperly raised the compensation of the city marshal after his term commenced. The Supreme Court rejected the claims of the plaintiffs. When Smith refused to assume office after his reelection he was entitled to hold over under his earlier election, but the period of his holding over was a prolongation of his prior term and not the commencement of a new term. (*Id.* at p. 356.) When the board of trustees elected and appointed him to the office he was entitled to assume office and to receive the compensation then offered. (*Id.* at p. 357.) The clear holding in *Rice* is that the benefits and detriments of office accrue not upon election to the office, but upon the qualification and assumption of the office.

Similar reasoning was applied in *Norton* v. *Lewis* (1917) 34 Cal.App. 621 [168 P. 388], this time to the detriment of the officeholder. There, an incumbent member of the county board of supervisors was reelected to a new four-year term. He failed, however, to file his bond and take the oath of office in a timely manner, thus rendering the office vacant under the old Political Code. Pursuant to statute, the supervisor was permitted and required to hold over until a successor could qualify. He held over and claimed entitlement to the increased compensation due under his new term of office. The court rejected the claim. By failing to qualify and assume the office the supervisor was not entitled to the benefits then provided for that office. (*Id.* at p. 624.) He was entitled to remain in office by virtue of his earlier

election, but that was a prolongation of his earlier term and he was only entitled to the compensation payable for that term. (*Ibid.*)

■ These authorities hold that it is the qualification and assumption of an office, and not merely the election thereto, which entitles a person to the benefits and imposes the detriments of office upon him. While the Supreme Court has not specifically considered this issue with respect to superior court judges, this conclusion is consistent with various pronouncements by that court. In the early case of *People* v. *Burbank, supra,* 12 Cal. at page 392, in discussing the length of a judicial term, the Supreme Court said: "If A is elected District Judge, and enters upon the office, or accepts it for a day, he is disqualified for other office during the whole period of six years; . . ." Although this statement was dictum, it demonstrates the understanding that it is the assumption of a term of office which is the critical criterion for accrual of the benefits and detriments of the term of office.

Similarly, in *Anderson* v. *Phillips, supra,* 13 Cal.3d at page 740, the court held that a vacancy in the office of superior court judge occurs when an elected judge leaves office and continues until an elected successor assumes office. The court said: "[A]nd the term cannot begin until the person elected qualifies and assumes the office, it is apparent that the appointee may continue to fill the vacancy until such time as the vacancy is terminated by the assumption of office by an *elected* judge. If no one is elected; if the person elected dies before assuming office; or if the successful candidate is an incumbent who resigns, retires, or vacates the office by taking an incompatible oath, the vacancy which accrued during the former term continues until a new election is held and the newly elected judge assumes the office. The new term does not come into existence until that time." Under this holding it is the qualification and assumption of the office, and not merely the election thereto, which causes a term to come into existence.

Disqualification from public office is a significant civil disability. (*Helena Rubenstein Internat.* v. *Younger* (1977) 71 Cal.App.3d 406, 418 [139 Cal.Rptr. 473].) The right to hold public office is considered fundamental under the state and federal Constitutions. (*Ibid.*; *Zeilenga* v. *Nelson* (1971) 4 Cal.3d 716, 720-721 [94 Cal.Rptr. 602, 484 P.2d 578].) Accordingly, "[t]he exercise of this right should not be declared prohibited or curtailed except by plain provisions of law. Ambiguities are to be resolved in favor of eligibility to office." (*Carter* v. *Com. on Qualifications, etc.* (1939) 14 Cal.2d 179, 182 [93 P.2d 140].) The Constitution does not clearly and unambiguously provide that ineligibility for other public office or employment accrues upon election rather than assumption of the office of superior court judge and the authorities we have cited indicate the contrary is true. Accordingly, we are

compelled to conclude that section 17 does not apply to a person who is elected but does not qualify and assume the office of superior court judge.

## CONCLUSION

In summary, we have concluded that a person who is appointed to fill temporarily the office of superior court judge until an elected judge can assume office is not appointed to a "term" as a superior court judge and is not ineligible under section 17 of the California Constitution for other public office or employment. The disqualification provisions of section 17 accrue upon the assumption of office for an elective term as a superior court judge and thus a person who is elected but does not qualify and assume the office also is not ineligible for other public office or employment. Since Judge Stirling resigned during his temporary tenure and did not assume office as an elected judge, he is not disqualified from serving as chief deputy attorney general. In view of this conclusion it is unnecessary to determine the actual period of ineligibility for public office which accrues when an elected judge assumes office and then resigns.[12]

## DISPOSITION

Let a peremptory writ of mandate issue declaring that M. David Stirling is not ineligible for public office or employment by virtue of having served as an appointive superior court judge and directing respondent Controller to pay the compensation to which he is otherwise entitled. The interim order requiring the respondent Controller to pay compensation to Stirling pending resolution of this writ proceeding is discharged by its own terms with the

---

[12]It has been suggested on occasion that an elected official's "term" expires when he dies, resigns, or otherwise leaves office. (*Pickens* v. *Johnson, supra,* 42 Cal.2d at p. 406; *French* v. *Jordan, supra,* 28 Cal.2d at p. 770; *Rice* v. *National City, supra,* 132 Cal. at p. 356.) On the other hand, the ineligibility provisions of the Constitution suggest a period of ineligibility for public office or employment which may be longer than the judge's continuance in office. The fact that the provisions were amended in 1966 to delete a provision which permitted superior and municipal court judges to resign to accept public office or employment would support this view. The Attorney General has concluded that ineligibility continues beyond actual tenure. (66 Ops.Cal.Atty.Gen. 440, *supra.*) The decision in *Chenoweth* v. *Chambers, supra,* 33 Cal.App. at page 107, so held with respect to a member of the Legislature. (See also *People* v. *Burbank, supra,* 12 Cal. at p. 392.) If a judge's ineligibility for public office or employment lasts beyond his tenure, then a subsidiary question would be whether the judge's term could be said to end when an elected successor assumes a new term of office. (See *Caldwell* v. *Bruning, supra,* 64 Cal.2d at p. 118.) We need not resolve these questions in this case.

finality of this decision. The alternative writ having served its purpose is discharged.

Marler, J., and Scotland, J., concurred.